## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, | Case No. 6:25-cv-00009-JDK |
| Plaintiffs, | |
| v. | |
| FEDERAL TRADE COMMISSION, *et al.*, | |
| Defendants. | |

## DEFENDANTS FEDERAL TRADE COMMISSION ET AL.'S MOTION TO DISMISS AND TRANSFER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ....................................................................................... 1

BACKGROUND .......................................................................................... 3

I.    Congress Enacted the HSR Act, and Authorized HSR
      Rulemaking, to Allow for Effective Premerger Review. .................................... 3

II.   The Commission Issued the Rule to Enable Effective and
      Efficient Premerger Review. ..................................................................... 7

STATEMENT OF ISSUES ............................................................................ 8

LEGAL STANDARD .................................................................................. 8

ARGUMENT .............................................................................................. 9

I.    Plaintiff Longview Chamber of Commerce Fails to Plead
      Allegations Sufficient to Establish Subject-Matter Jurisdiction
      over Its Claim. ........................................................................................ 9

II.   Because Plaintiff Longview Chamber of Commerce Lacks
      Standing, Venue Is Improper. ................................................................. 20

CONCLUSION ......................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967)...................................................................... 19

*Am. Newspaper Publishers Ass'ns v. U.S. Postal Serv.,*
    789 F.2d 1090 (5th Cir. 1986)....................................................... 21

*Arizona v. Biden,*
    40 F.4th 375 (6th Cir. 2002) ......................................................... 17

*Associated Gen. Contractors v. Fed. Acquisition Regul.*
    *Council,*
    720 F. Supp. 3d 461 (W.D. La. 2024) ........................................... 21

*Blacklands R.R. v. Ne. Tex. Rural Rail Transp. Dist.,*
    No. 1:19-cv-250, 2019 WL 3613071 (E.D. Tex. Aug. 5,
    2019)................................................................................................. 8

*Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.,*
    No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr.
    17, 2023) ......................................................................................... 21

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)................................................................. 10, 13

*Cornerstone Christian Sch. v. Univ. Interscholastic*
    *League,*
    563 F.3d 127 (5th Cir. 2009)........................................................... 9

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006)......................................................................... 9

*Faculty, Alumni, & Students Opposed to Racial*
    *Preferences v. N.Y.U.,*
    11 F.4th 68 (2d Cir. 2021)....................................................... 12, 14

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024)................................................................. 17, 18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.,*
    528 U.S. 167 (2000)......................................................................... 9

*Ga. Republican Party v. SEC,*
    888 F.3d 1198, 1205 (11th Cir. 2018)........................................... 22

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977)................................................. 10, 14, 16, 17

*Immigrant Assistance Project v. INS,*
    306 F.3d 842 (9th Cir. 2002).......................................................... 22

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 9, 14

*Miller v. Albright*,
    523 U.S. 420, 427 (1998) ........................................................................ 11

*Missouri v. U.S. Dep't of Educ.*,
    No. 24-cv-103, 2024 WL 4374124 (S.D. Ga. Oct. 2, 2024) ................. 11, 22

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
    116 F.4th 488 (5th Cir. 2024) ............................................................ 14, 22

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ............................................................................... 19

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*,
    719 F.3d 338 (5th Cir. 2013) .................................................................. 23

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998) ............................................................................... 19

*Plains Com. Bank v. Long Fam. Land & Cattle Co.*,
    554 U.S. 316 (2008) ............................................................................... 16

*Prairie Rivers Network v. Dynegy Midwest Generation,*
    *LLC*,
    2 F.4th 1002 (7th Cir. 2021) ............................................................ 12, 14

*Reuben H. Donnelley Corp. v. FTC*,
    580 F.2d 264 (7th Cir. 1978) .................................................................. 20

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................. 9

*St. Joseph Abbey v. Castille*,
    700 F.3d 154 (5th Cir. 2012) .................................................................. 23

*Students for Fair Admissions, Inc. v. President & Fellows*
    *of Harvard Coll.*,
    600 U.S. 181 (2023) ............................................................................... 10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................................... 11, 12, 14

*Tenth St. Residential Ass'n v. City of Dallas, Texas*,
    968 F.3d 492 (5th Cir. 2020) .................................................................. 10

*United States v. Texas*,
    599 U.S. 670 (2023) ............................................................................... 17

## STATUTES

11 U.S.C. § 363 ........................................................................................... 3

15 U.S.C. § 1 ............................................................................................... 4

iii

15 U.S.C. § 18 ............................................................................................................. 4

15 U.S.C. § 18a ................................................................................ 3, 4, 5, 6, 7, 16

15 U.S.C. § 18b ........................................................................................................... 8

15 U.S.C. §2 ................................................................................................................. 4

28 U.S.C. § 1391 .............................................................................................. 20, 23

28 U.S.C. § 1404 ...................................................................................................... 23

28 U.S.C. § 1406 ........................................................................................................ 9

## RULES AND REGULATIONS

16 C.F.R. Part 801 (1978) ...................................................................................... 5

16 C.F.R. Part 802 (1978) ........................................................................... 4, 5, 16

16 C.F.R. Part 803 (1978) ...................................................................................... 5

Fed. R. Civ. P. 12 ............................................................................................. 8, 22

Fed. R. Civ. P. 17 ................................................................................................... 18

Fed. R. Civ. P. 23 ................................................................................................... 18

Premerger Notification; Reporting and Waiting Period
    Requirements,
    88 Fed. Reg. 42,178 (June 29, 2023) ........................................................ 7

Premerger Notification; Reporting and Waiting Period
    Requirements,
    89 Fed. Reg. 89,216 (Nov. 12, 2024) ................................. 1, 2, 4, 5, 6, 7, 8

Revised Jurisdictional Thresholds for Section 7A of the
    Clayton Act,
    90 Fed. Reg. 7,697 (Jan. 22, 2025) ............................................................. 4

## OTHER AUTHORITIES

122 Cong. Rec. 25051 (1976) ................................................................................. 5

14D Charles Alan Wright & Arthur R. Miller, Federal
    Practice & Procedure § 3815 (4th ed.) ..................................................... 22

H.R. Rep. 94-1373 (1976) ................................................................................. 4, 5

Michael T. Morley & F. Andrew Hessick, *Against
    Associational Standing*,
    91 U. Chi. L. Rev. 1539, 1583 (2024) ...................................................... 18

## INTRODUCTION

The Hart-Scott-Rodino Act (HSR Act) requires parties to very large merger and acquisition (M&A) transactions to notify the Federal Trade Commission and the Department of Justice, Antitrust Division (collectively, the antitrust agencies) of the proposed transaction. The HSR Act gives the antitrust agencies a short period (typically 30 days) to review information from the parties and identify those transactions that require a closer look to determine whether they may violate U.S. antitrust laws. If so, the antitrust agencies can launch a more extensive investigation to determine whether to seek an injunction to remedy or prevent illegal transactions before consummation and the resulting harm to consumers and competition. The agencies rely on information in the initial notification, known as the HSR Form (or just "the Form"), to conduct this initial, premerger antitrust risk assessment and to identify transactions that require additional investigation.

By design, mandatory premerger review affects only a small subset of M&A transactions, and only a fraction of businesses in the United States even engage in any M&A activity at all in any given year. The statute also has numerous exemptions. As a result, fewer than 200 transactions are reported each month on average.

In October 2024, all five FTC Commissioners, Democrats and Republicans, unanimously voted to update the nearly 50-year-old notification form to ensure that the antitrust agencies can effectively and efficiently detect illegal M&A transactions during their premerger review. *See* Premerger Notification; Reporting and Waiting Period Requirements, 89 Fed. Reg. 89,216 (Nov. 12, 2024) ("the Rule"). The Rule updates the HSR Form and draws on the antitrust agencies' four decades of

"experience implementing HSR," which "has taught the Commission which information is most important to fulfilling Congress's mandate to conduct premerger review." 89 Fed. Reg. at 89,216 (Concurring Statement of Commissioner Andrew N. Ferguson) ("Ferguson Concurrence"). The Rule responds both to changes in corporate structure and dealmaking, and to new market realities that "were rare in 1978" and have changed the way businesses compete. *Id.* These profound changes had created gaps between the information collected on the prior form and the "information [the antitrust agencies] need[] to fulfill Congress's intention" of determining whether proposed transactions, if consummated, may violate the antitrust laws. *Id.* The Rule "achieves the benefits associated with mandatory premerger review with an overall burden that is reasonable and consistent with the legislative purpose of the HSR Act." *Id.* at 89,218 (Statement of Basis and Purpose); *see also id.* at 89,414 (Ferguson Concurrence) (concluding that the Rule's "benefits are many, and, by comparison, the added burdens are reasonable"). The Rule was published in November 2024 and went into effect in February 2025. Hundreds of parties have already submitted the updated forms for their proposed transactions, and the antitrust agencies are using those submissions to conduct the statutorily required premerger review.

Plaintiffs—one local chamber of commerce and several national organizations (the U.S. Chamber of Commerce and trade associations representing CEOs and the private equity industry)—claim that the Rule violates the Administrative Procedure Act. But before the case can proceed to the merits, the Court must first ascertain its subject-matter jurisdiction and determine whether venue is proper in this District.

Nearly all plaintiffs reside in Washington, D.C., as do all defendants. Plaintiffs' sole basis for suing in the Eastern District of Texas, Tyler Division, is that Plaintiff Longview Chamber of Commerce resides here. But Longview Chamber has not adequately pleaded standing, as it has not adequately pleaded that any member has certainly impending plans to be one of the small fraction of companies nationwide to file an HSR form. This Court therefore lacks subject-matter jurisdiction over Longview Chamber's claims. And without Longview Chamber, venue is improper. Thus, the Court should transfer this case to the U.S. District Court for the District of Columbia or, in the alternative, dismiss the case.

## BACKGROUND

### I. Congress Enacted the HSR Act, and Authorized HSR Rulemaking, to Allow for Effective Premerger Review.

The HSR Act prevents certain transactions from closing unless the parties first notify the antitrust agencies of the transaction and generally wait at least 30 days.[1] 15 U.S.C. § 18a(a). Congress created the premerger notification requirement to give the antitrust agencies the opportunity to investigate and "determine whether such acquisition may, if consummated, violate the antitrust laws," and to file actions to stop anticompetitive transactions before they occur. *Id.* § 18a(d)(1).

The Act's notification requirement applies only to the largest parties and transactions. In general, the requirement applies only if: (1) the transaction is valued

---

[1] The waiting period is 15 days for cash tender offers and certain bankruptcies. *See* 15 U.S.C. § 18a(a); 11 U.S.C. § 363(b)(2). In some cases, the agencies may terminate their review early and allow the parties to close before the statutory waiting period expires. 15 U.S.C. § 18a(b)(2).

at $126.4 million or more, and (2) one party has sales or assets of $252.9 million or more, while the other party has sales or assets of $25.3 million or more. *See* 15 U.S.C. § 18a(a); *see also* Revised Jurisdictional Thresholds for Section 7A of the Clayton Act, 90 Fed. Reg. 7,697 (Jan. 22, 2025) (setting 2025 thresholds).[2] The Act also exempts twelve different categories of transactions from the notification requirement altogether, regardless of size. 15 U.S.C. § 18a(c); *see also* 16 C.F.R. Part 802 (1978) (implementing the statutory exemptions). Because of these statutory limitations on the notification requirement, typically fewer than 20% of M&A transactions that occur each year are reported under the HSR Act. 89 Fed. Reg. at 89,219.

The HSR Act's premerger notification requirements are essential to prevent violations of U.S. antitrust laws. Section 7 of the Clayton Act prohibits any transaction where, in any relevant market, "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. The Clayton Act "is intended to halt monopolies and restraints of trade in their initial stages, before they ripen into full-scale Sherman Act violations." H.R. Rep. 94-1373, at 5 (1976); *see* 15 U.S.C. §§ 1, 2.

Before the HSR Act, the antitrust agencies rarely had the chance to sue to block illegal mergers before they were consummated, limiting the agencies' ability to prevent serious harm to competition. Post-consummation enforcement was often

---

[2] Transactions valued at more than $505.8 million are also reportable, absent an exemption, regardless of the size of the parties. 15 U.S.C. § 18a(a)(2); *see also* 90 Fed. Reg. 7,697. The size-of-transaction and size-of-party thresholds are adjusted annually based on changes in gross national product. 15 U.S.C. § 18a(a). The numbers above are for 2025.

lengthy and costly, and it was ineffective at restoring competition; unwinding a merger post-consummation was "like trying to unscramble an omelet."  89 Fed. Reg. at 89,237 (citing 122 Cong. Rec. 25051 (1976)). Congress accordingly passed the HSR Act in 1976 to strengthen antitrust enforcement by giving the antitrust agencies "a fair and reasonable opportunity to detect and investigate large mergers of questionable legality before they are consummated." H.R. Rep. 94-1373, at 5.

The HSR Act provides that the FTC, with concurrence from DOJ's Antitrust Division, "shall require" by rule that the premerger filing notification "be in such form and contain such documentary material and information relevant to a proposed acquisition as is necessary and appropriate … to determine whether such acquisition, if consummated, may violate the antitrust laws." 15 U.S.C. § 18a(d)(1). Congress also authorized the FTC to "define the terms used in [the HSR Act]" and "prescribe such other rules as may be necessary and appropriate to carry out the purposes of [the Act]." *Id.* § 18a(d)(2).

The FTC promulgated the first set of HSR regulations in 1978. *See* 16 C.F.R. Parts 801-803 (1978); 89 Fed. Reg. at 89,249. The regulations require that parties use the HSR Form to notify the antitrust agencies of their proposed transaction. *See* 15 U.S.C. § 18a(d); 16 C.F.R. § 803.1. The Form contains certain information and documentary material necessary and appropriate for the agencies to conduct a preliminary antitrust assessment. *Id.* If a filer does not provide all the information and documents the HSR Form requires, then the filer must provide "a statement of reasons for such noncompliance." 15 U.S.C. § 18a(b)(1)(A)(ii); 16 C.F.R. § 803.3. The

5

Commission has adjusted the Form over the years via rulemaking, but the Form has not seen an overhaul in the nearly five decades since its inception. 89 Fed. Reg. at 89,217. For this Rule, however, the agencies conducted a comprehensive review of the premerger notification process to address the cumulative effects of market changes in the decades since the Form's inception. *Id.*

The antitrust agencies must review reported transactions for potential antitrust violations and decide whether to challenge problematic transactions in tight timeframes. Because the initial review period is only 15 to 30 days long, the agencies must rely heavily on the Form to screen for violations and efficiently allocate their limited investigative resources. Before the most recent updates, the limited information in the Form often proved inadequate and forced the agencies to seek additional information from the merging firms—including by issuing "Second Requests"—or from third parties unconnected to the transaction. *See* 15 U.S.C. § 18a(e); 89 Fed. Reg. at 89,244. The in-depth Second Request process, although helpful in identifying likely antitrust violations, can involve millions of documents and terabytes of data. It is thus a time- and resource-intensive process for both the agencies and the merging parties, and it imposes costs on third parties. *See, e.g.*, 89 Fed. Reg. at 89,244, 89,246. Through its own review and after considering input from the public, the Commission determined that the information the Rule requires is necessary and appropriate to enable the agencies to detect transactions that may violate the law and to identify potentially unlawful transactions more quickly and with greater accuracy. *Id.* at 89,217. This greater efficacy will also narrow the scope

of the agencies' investigations in some cases; in others, it will reduce the need to conduct a more burdensome investigation with Second Requests. *Id.*

## II.    The Commission Issued the Rule to Enable Effective and Efficient Premerger Review.

To ensure that the antitrust agencies "have access to documents that reflect pre-transaction assessments of business realities," the FTC in 2023 issued a notice of proposed rulemaking to update the HSR Form. Premerger Notification; Reporting and Waiting Period Requirements, 88 Fed. Reg. 42,178, 42,194 (June 29, 2023) (proposed rule). During the 3-month comment period, the Commission received 721 comments; most supported the proposed rule and the effort to collect more information in the HSR Form to help prevent harmful mergers. 89 Fed. Reg. at 89,217. Others opposed certain aspects of the proposed rule. *Id.*

After careful consideration of the comments, a bipartisan Commission voted unanimously to issue the Rule in October 2024. *See* 89 Fed. Reg. at 89,394, 89,399, 89,408. The Rule is substantially narrower than the proposed rule. *See* 89 Fed. Reg. at 89,412-14 (Ferguson Concurrence) (explaining the many differences between the proposed rule and the Rule). As then-Commissioner and now Chairman Ferguson explained, the Rule "dramatically curtail[ed]" the proposed rule in part because of the arrival of Commissioners Ferguson and Holyoak. 89 Fed. Reg. at 89,412. The Rule makes several commonsense updates to the HSR Form so that the antitrust agencies can better carry out their statutory duty of determining whether reported transactions, "if consummated," may "violate antitrust laws," within the HSR Act's short timeframes. 15 U.S.C. § 18a(d)(1); *see* 89 Fed. Reg. at 89,399, 89,408. The Rule

also implements the 2022 Merger Fee Modernization Act, which requires HSR filers to report any subsidy from a "foreign entity of concern." 15 U.S.C. § 18b.

The Rule was posted on the FTC's website in October 2024[3] and was published in the Federal Register on November 12, 2024. The Rule went into effect on February 10, 2025. 89 Fed. Reg. at 89,216.

Plaintiffs filed this lawsuit on January 10, 2025. Compl., Dkt. 1. Plaintiffs allege that the Rule violates the Administrative Procedure Act (APA), primarily on the theory that the Rule's costs outweigh its benefits. Plaintiffs seek to set aside and enjoin the Rule. Compl. At 103 (Prayer for Relief).

## STATEMENT OF ISSUES

1) Whether Longview Chamber has adequately pleaded associational standing.

2) Whether this Court should transfer this case to the U.S. District Court for the District of Columbia, or dismiss.

## LEGAL STANDARD

Defendants move to dismiss Longview Chamber and then transfer this case to a proper venue or dismiss for lack of venue. Fed. R. Civ. P. 12(b)(1), (3). "When an objection to venue is raised, the plaintiff bears the burden of demonstrating that venue is proper in the selected forum." *Blacklands R.R. v. Ne. Tex. Rural Rail Transp. Dist.*, No. 1:19-cv-250, 2019 WL 3613071, at *2 (E.D. Tex. Aug. 5, 2019) (cleaned up).

---

[3] FTC Finalizes Changes to Premerger Notification Form (Oct. 10, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/10/ftc-finalizes-changes-premerger-notification-form.

If the district court concludes that venue is improper, it can either dismiss the case under Rule 12(b)(3) or, in the interest of justice, transfer the case to a district where venue is proper. 28 U.S.C. § 1406(a).

Similarly, it is "presume[d] that federal courts lack jurisdiction," and therefore plaintiffs "carry the burden of establishing" jurisdiction, including the elements of Article III standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 & n.3 (2006). "[O]n a motion to dismiss, plaintiffs must allege facts that give rise to a plausible claim of [their] standing." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).

## ARGUMENT

### I. Plaintiff Longview Chamber of Commerce Fails to Plead Allegations Sufficient to Establish Subject-Matter Jurisdiction over Its Claim.

As with any other claim, a plaintiff bringing an APA challenge to an agency rulemaking must demonstrate that it has Article III standing. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180 (2000). To establish an "imminent" injury, a plaintiff must establish

9

that the injury is "*certainly* impending" and thus "not too speculative for Article III purposes." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Organizations may demonstrate standing "in two ways. Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (citation omitted). The former is often referred to as "organizational standing" and the latter as "associational standing." *See Tenth St. Residential Ass'n v. City of Dallas, Texas*, 968 F.3d 492, 500 (5th Cir. 2020). This case concerns associational standing, which requires an organization to demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Longview Chamber has failed to carry its burden of showing that this Court has subject-matter jurisdiction over its claim. Longview Chamber's claim fails each of the three *Hunt* prongs for associational standing, creates tension with other areas of law, and is unripe. Assessing Longview Chamber's standing at this early juncture is critical because—as explained in Section II of this motion—Longview Chamber's claim is the only basis for venue in this Court. If Longview Chamber lacks standing, then this Court "cannot provide the proper venue for suit because a plaintiff that lacks standing cannot create venue where it would not otherwise exist." *Missouri v.*

*U.S. Dep't of Educ.*, No. 24-cv-103, 2024 WL 4374124, at *4 (S.D. Ga. Oct. 2, 2024); *see also Miller v. Albright*, 523 U.S. 420, 427 (1998) (explaining that lawsuit against federal government was transferred from the Eastern District of Texas to Washington, D.C. "[b]ecause venue in Texas was … improper" after dismissal for lack of standing of sole Texas-based plaintiff).[4]

**1.** Here, Longview Chamber asserts only associational standing, i.e., standing to sue as representative of its members. Compl. ¶ 28. But among other failings, Longview Chamber's allegations are insufficient to establish the first *Hunt* element for associational standing.

An association must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Mere likelihood of injury is not enough. "Th[e] requirement of naming the affected members has never been dispensed with in light of statistical probabilities" that an association has members who might be injured, except "where *all* the members of the organization are affected by the challenged activity." *Id.* at 498-99. Longview Chamber does not contend (nor could it) that *all* its members will imminently file the new HSR Form. Thus, for Longview Chamber to represent its members here, it must plead that it has at least one member engaged in an actual or "certainly impending" transaction subject to HSR notification.

Longview Chamber alleges that it "represents over 1,000 businesses and

---

[4] Because Longview Chamber is the sole basis for venue in this Court, Defendants focus here on Longview Chamber's standing only. Defendants preserve their right to contest the remaining plaintiffs' standing at a later stage in this litigation.

professional organizations," including some unidentified "members" who it says engage in frequent M&A activity and "regularly" enter into transactions that meet the HSR size thresholds. *See* Compl. ¶¶ 18, 28. But it alleges no facts regarding "who these members are" or any specifics about any individual member, let alone any specifics about any actual or certainly impending reportable M&A transactions, which would be necessary to demonstrate "that one or more of [its] members would thereby be directly affected apart from their special interest in the subject." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021) (cleaned up).

The Complaint does not explain whether any of Longview Chamber's members have started preparing an HSR filing that they intend to submit, and if so, when they plan to submit. *See Faculty, Alumni, & Students Opposed to Racial Preferences v. N.Y.U.*, 11 F.4th 68, 76 (2d Cir. 2021). The Complaint does not even allege that any Longview member imminently will enter into an HSR reportable transaction—which, recall, are rare events because of the HSR Act's high thresholds and many exemptions. *See supra* 3-4. These specific allegations are necessary because Longview Chamber cannot rely on a mere "statistical probability" that it has members who will be imminently injured. *Summers*, 555 U.S. at 497-98. "[P]resuming that at least one of [Longview Chamber's] individual members has standing to sue on their own … trends too closely to the statistical probability theory of associational standing rejected in *Summers*." *Prairie Rivers*, 2 F.4th at 1009-10. And it flouts the Supreme Court's "repeated" warning "that threatened injury must be *certainly impending* to

constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (2013) (emphasis in original) (cleaned up).

The Complaint tries to satisfy the first prong of *Hunt* with generalized allegations, *see* Compl. ¶ 28, but that attempt fails. As an initial matter, the Complaint offers reason for skepticism that paragraph 28 applies to Longview Chamber.[5] For each of the *other* three plaintiffs in this case, the Complaint states that the national associations have members that "will be subject to the requirements of the Rule." Compl. ¶ 14 (Chamber of Commerce); ¶ 16 (Business Roundtable); ¶ 17 (American Investment Council). That allegation, however, is noticeably absent from Longview Chamber's description of itself. *See* Compl. ¶ 18.

Even assuming the allegations in paragraph 28 apply to Longview Chamber, they do not satisfy the first prong of *Hunt*. That paragraph says that "many of Plaintiffs' members regularly enter into transactions that must be reported under the HSR Act" and those members "plan to engage in such transactions in the future, as evidenced by their stated intentions, the nature of their businesses, and/or their consistent and established track record of frequent M&A activity." Compl. ¶ 28. These allegations merely highlight that Longview Chamber has failed to plead that any member is a party to a certainly imminent HSR-reportable transaction. The Supreme Court has squarely rejected the idea that a party can demonstrate imminence based

---

[5] Paragraph 28 of the Complaint refers generally to "plaintiffs" without specifying whether the allegations therein apply to *each* plaintiff. As explained above, the Court must determine whether Longview Chamber, specifically, has standing because venue is improper in this Court if not.

on "an intent, some day" to engage in conduct that would cause their injury. *Lujan*, 504 U.S. at 564 n.2; *see also id.* (no standing where plaintiff "allege[d] only an injury at some indefinite future time"). The Court likewise held that past conduct—even accompanied by an expressed "intent" to engage in that conduct again—"is simply not enough" to demonstrate injury. *Id.* at 564. What is required instead is a "description of concrete plans, or indeed even any specification of *when* the some day will be." *Id.* Longview Chamber pleads neither. Because it has failed to plead that any member will be imminently subject to the Rule's requirements, Longview Chamber lacks standing. *Hunt*, 432 U.S. at 343.[6]

**2.** The Complaint does not satisfy the second or third prongs of *Hunt* either.

Longview Chamber has not shown that "the interests" it "seeks to protect" through this litigation "are germane to the organization's purpose." *Hunt*, 432 U.S. at 343. The Complaint says that "[e]ach Plaintiff is committed to protecting the interests of its members, as well as of the broader business community in this district

---

[6] The Fifth Circuit recently held that associational plaintiffs must allege only "that a specific member exists," and not necessarily name that member. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 n.5 (5th Cir. 2024). But even without naming names, an associational plaintiff still must allege facts about specific members and the specific harms they will imminently face. *See, e.g.*, *N.Y.U.*, 11 F.4th at 76 (faulting associational plaintiff for failing to explain "when" its members planned to engage in conduct that would lead to injury or whether they had actually completed the articles that would lead to their alleged injury); *Prairie Rivers*, 2 F.4th at 1009 (holding association lacked standing because it did not identify "who these members are or how exactly the alleged [challenged action] will harm them individually"). Defendants also preserve the argument that *National Infusion Center* is wrongly decided because the Supreme Court has plainly "require[d]" plaintiffs to "nam[e] the affected members" absent an exception not relevant here. *Summers*, 555 U.S. at 498.

and across the Nation." Compl. ¶ 29. But Longview Chamber does not allege or represent that *all* its members—much less "the broader business community … across the Nation"— are even aware of, much less favor, this litigation. And plaintiffs cannot dispute that some members of the business community would likely *oppose* this litigation. The Rule became effective on February 10, 2025. Already hundreds of parties have spent the time and resources necessary to prepare the new Form and seek clearance by the antitrust agencies, and hundreds more are likely actively preparing the Form and hoping to secure clearance for a planned transaction. Should Longview Chamber succeed in having this Rule vacated, parties planning acquisitions who have already begun working on the new Form would have to alter their plans midstream. Time and money spent filling out the new Form would be lost, and they would need to spend additional time and money to fill out the old form. That lost time would also likely push back the timing of their anticipated transaction. Longview Chamber is hardly representing the interest of parties in such a situation.

Longview Chamber likewise is not representing the interest of companies who deal with parties to proposed transactions. As explained above (at 3-4, 7-8), the purpose of the new Form—and the purpose of the HSR Act—is to allow the antitrust agencies to detect and try to prevent illegally anticompetitive transactions before they take place. If those transactions go undetected and close, the result can irreparably harm other market participants, including customers, suppliers, and competitors who are part of the "broader business community" and may even be Longview Chamber members. Longview Chamber does not explain how it can represent these members,

much less the entire business community, when many of these parties would prefer robust and effective antitrust enforcement that protects them from anticompetitive monopolists. Litigation that runs contrary to the interests of members of the community Longview Chamber purports to represent cannot possibly be "germane to [Longview Chamber's] purpose." *Hunt*, 432 U.S. at 343.

Longview Chamber also fails to plead associational standing because both "the claim asserted" and the "relief requested requires the participation of individual members." *Hunt*, 432 U.S. at 343. The claim asserted requires individual participation because, as explained above (at 4), the Rule applies to a small set of transactions involving only those businesses engaged in an HSR reportable transaction, and it has many exemptions. The Court cannot satisfy its "independent obligation to assure [itself] of [its] jurisdiction," without knowing details about individual members and their proposed transactions. *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008). As just one example, whether an HSR filing is necessary depends on the size of the proposed transaction and, in some cases, the size of the parties. *See* 15 U.S.C. § 18a(a)(2)(B). The size of the person, in turn, is a fact-dependent inquiry. *See To File or Not to File*, Federal Trade Commission at 4-15 (Sept. 2008), https://www.ftc.gov/sites/default/files/attachments/premerger-introductory-guides/guide2.pdf. And of course, the statutory exemptions require knowledge of the specific details of a proposed transaction and the parties involved. *See* 15 U.S.C. § 18a(c); 16 C.F.R. Part 802. In short, participation of an individual member is necessary for the Court to ensure that the litigants are even subject to the

16

Rule.

The relief requested also requires individual member participation. Plaintiffs ask the Court to "set[] aside" the Rule and to "enjoin[] the FTC from enforcing" it. Compl. at 103. But any relief should be party-specific, in keeping with the "bedrock practice of case-by-case judgments with respect to the parties in each case." *United States v. Texas*, 599 U.S. 670, 693-703 (2023) (Gorusch, J., concurring) (quoting *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2002) (Sutton, J., concurring)). That is, the Court can award relief only to the specific parties to the case. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J., concurring) ("[A]s a general rule, American courts of equity did not provide relief beyond the parties to the case." (internal quotation omitted)). The Court cannot award party-specific relief, however, without knowing which Longview Chamber members have standing and are seeking relief.

Withholding information about those members also "creates the possibility of asymmetrical preclusion." *Id.* For instance, should Defendants win this case on the merits, the agencies must know the identity of all individual parties to the case so that they can preclude those parties from arguing in any future enforcement action that the Rule is invalid. A contrary approach would "allow a member" of Longview Chamber "two bites at the apple." *Id.* at 403. Because this case cannot proceed without individual participation, Longview Chamber lacks associational standing. *Hunt*, 432 U.S. at 343.

**3.** Beyond its failure to satisfy the *Hunt* factors, Longview Chamber's claim

17

also creates "tension" with "other areas of law." *All. for Hippocratic Med.*, 602 U.S. at 402 (Thomas, J., concurring). Like many assertions of associational standing, Longview Chamber is trying to "subvert[] the class-action mechanism." *Id.* Longview Chamber says that it "represents … over 1,000 businesses and professional organizations," Compl. ¶ 18, yet it seemingly seeks relief on behalf of all of them without making any effort to show numerosity, commonality, typicality, or adequacy of representation. *See* Fed. R. Civ. P. 23(a).

Longview Chamber's claim of associational standing also fails to comply with Rule 17's real-party-in-interest requirement. *See* Fed. R. Civ. P. 17; *see also* Michael T. Morley & F. Andrew Hessick, *Against Associational Standing*, 91 U. Chi. L. Rev. 1539, 1583 (2024). Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1), and it "contains no language allowing uninjured associations to sue to enforce the rights of their members or other constituents." Morley & Hessick, *supra*, 91 U. Chi. L. Rev. at 1583. Yet that is precisely what Longview Chamber seeks to do here. After all, Longview Chamber itself does not allege that it ever has or ever plans to engage in any HSR-eligible transactions. Its standing is based entirely on its members, yet those members are neither identified nor described in the complaint. For these reasons too, Longview Chamber lacks associational standing.

**4.** Finally, Longview Chamber's claim is unripe for many of the same reasons that Longview Chamber lacks standing. The Supreme Court has explained that "[a]bsent a statutory provision providing for immediate judicial review"—which does

not exist here—"a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review … until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). "The major exception" to this principle "is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately." *Id.* (internal quotation omitted). This is not such a case. Unlike a typical regulation that requires regulated entities to immediately take some affirmative step to comply (*e.g.*, start making required disclosures, stop using a certain ingredient, etc.), the HSR Rule does not impose any immediate obligations or require businesses generally to change any ongoing commercial practice. To trigger the Rule's requirements, parties must be engaged in an uncommonly large M&A transaction subject to the statutory notification requirement—and that assumes they do not fall within the HSR Act's many exemptions. Here, Longview Chamber does not allege that any of its members are presently involved in such a transaction, or that any member currently must fill out the new Form. In short, the Rule's "effects" have not yet been "felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-149 (1967)). Once a Longview Chamber member is actually engaged in an HSR-reportable transaction, that member will have a ripe APA claim. Until then, Longview Chamber's speculative challenge is not ripe.

## II.    Because Plaintiff Longview Chamber of Commerce Lacks Standing, Venue Is Improper.

Plaintiffs rely solely on Longview Chamber to establish venue in this district; all other plaintiffs are in Washington, D.C., like the defendant agencies. Thus, if Longview Chamber lacks standing, the Court should either transfer this case to the U.S. District Court for the District of Columbia or dismiss.

Where a plaintiff sues an officer or agency of the United States, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). A plaintiff corporation or association resides in the district where it "maintains its principal place of business." 28 U.S.C. § 1391(c)(2).

Plaintiffs claim venue in the Eastern District of Texas based solely on Longview Chamber's principal place of business being in Longview, Texas. *See* Compl. ¶ 18, ¶ 31. All the other Plaintiffs appear to reside in Washington, D.C. The U.S. Chamber and Business Roundtable are headquartered there. Compl. ¶¶ 14, 16. The Complaint does not state where AIC is headquartered, but AIC's website lists a Washington, D.C. address. AIC, https://www.investmentcouncil.org/ (last visited Feb. 27, 2025). Defendants FTC and the Chair of the FTC also reside in D.C. Compl. ¶¶ 25-26; *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266-67 & n.3 (7th Cir. 1978) (holding that the FTC's residence is in Washington, D.C., where it performs its official duties).

20

The Complaint references Texas a few times in describing the other three Plaintiffs, but none of those references are sufficient to establish that those Plaintiffs reside in the Eastern District. The remaining plaintiffs' sole connection to this District is that some of their members have offices or employees in Texas. But the Fifth Circuit has long rejected the proposition that "the location of a trade association member may be imputed to the association for venue purposes." *Am. Newspaper Publishers Ass'ns v. U.S. Postal Serv.*, 789 F.2d 1090, 1092 (5th Cir. 1986). Business Roundtable, an association of CEOs, alleges that its CEO members lead companies that "have employees in every state, including Texas." Compl. ¶ 16. AIC, an association of private equity and private credit firms, says it has members with "offices and portfolio companies in every state in America," including Texas. Compl. ¶ 17. U.S. Chamber claims it has "members in the Eastern District of Texas." *See* Compl. ¶ 14. None of those allegations establish that these organizations have their principal place of business in Texas, let alone in the Eastern District specifically, and they are insufficient to show that venue is proper in this Court.[7] *See Am. Newspaper Publishers Ass'ns*, 79 F.2d at 1092.

---

[7] To the extent Plaintiffs try to switch theories and claim venue in this district based on § 1391(e)(1)(B) rather than (C), the possibility that a rulemaking may affect an associational plaintiff's members in a particular district is legally insufficient to establish that "a substantial part of the events or omissions giving rise to the claim occurred" in that district, where, as here, those members are not themselves parties to the case. *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *3 (N.D. Tex. Apr. 17, 2023); *see also Associated Gen. Contractors v. Fed. Acquisition Regul. Council*, 720 F. Supp. 3d 461, 473 (W.D. La. 2024) (in case challenging a rulemaking that would be enforced nationwide, the events giving rise to the rule took place in Washington, D.C., where

Because Longview Chamber lacks standing, there is no basis for venue in this district. *See Immigrant Assistance Project v. INS*, 306 F.3d 842, 867 n.20 (9th Cir. 2002) (holding that the standing of one plaintiff was "important because it is the only plaintiff … who is a resident of Washington and on whom, therefore, venue in the Western District of Washington could be based"); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3815 (4th ed.) ("[V]enue cannot be based on the joinder of a plaintiff" that has been added "for the purpose of creating venue in the district."). When, as here, the party on whom plaintiffs rely for venue lacks standing, courts often transfer the case to a proper venue. *See, e.g.*, *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir. 2018) (transferring case where only party that satisfied venue failed to establish standing); *Missouri*, No. 24-cv-103, 2024 WL 4374124, at *4 (same). *Nat'l Infusion Ctr. Ass'n v. Becerra*, 716 F. Supp. 3d. 478, 485-86 (W.D. Tex. Feb. 12, 2024) (ordering transfer because, after dismissal of lead plaintiff, "no defendant would reside in this district, no plaintiff resides in this district, and nothing suggests that a substantial part of the events or omissions giving rise to the claim occurred in this district"), *rev'd on other grounds*, 116 F.4th 488, 518 (5th Cir. 2024). Accordingly, the Court should transfer this case to the U.S. District Court for the District of Columbia, where all other Plaintiffs appear to reside, where Defendants reside, and where the challenged Rule was promulgated. Alternatively, the Court should dismiss for lack of venue. *See* Fed. R. Civ. P. 12(b)(3).

---

the rule was drafted, and venue was thus improper in the Western District of Louisiana).

Finally, this Court can alternatively transfer the case "in the interest of justice" and for "the convenience of parties and witnesses," 28 U.S.C. § 1404(a), even without dismissing the Longview Chamber. Venue is indisputably proper in the United States District Court for the District of Columbia because the "defendant[s] in the action reside[]" there. 28 U.S.C. § 1391(e)(1). It is also a convenient venue for three of the four plaintiffs, who all appear to reside in Washington, D.C. This Court could thus transfer this case to that venue without addressing the many objections to the justiciability of Longview Chamber's claims. Such a transfer would allow the Court to "avoid deciding [the] constitutional issue" that Longview Chamber's alleged standing raises. *St. Joseph Abbey v. Castille*, 700 F.3d 154, 165 (5th Cir. 2012); *see also Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 n.3 (5th Cir. 2013) (courts have "license to *avoid* complex questions of standing in cases where the standing of others makes a case justiciable").

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff Longview Chamber's claims for lack of subject-matter jurisdiction. The Court should then transfer this case to the United States District Court for the District of Columbia, or it should dismiss the case for lack of venue.

Respectfully submitted,

LUCAS CROSLOW
    *General Counsel*

H. THOMAS BYRON III
    *Deputy General Counsel*

MARIEL GOETZ
BENJAMIN F. AIKEN
    *Attorneys*

April 10, 2025                    /s/    Benjamin F. Aiken

D.C. Bar No. 1046730
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
T: (202) 326-2151
baiken@ftc.gov

24