# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

CHAMBER OF COMMERCE OF THE UNITED
STATES OF AMERICA, BUSINESS
ROUNDTABLE,
AMERICAN INVESTMENT COUNCIL, and
LONGVIEW CHAMBER OF COMMERCE,

                *Plaintiffs*,

v.

FEDERAL TRADE COMMISSION and
ANDREW N. FERGUSON, in his official
capacity,

                *Defendants*.

Case No. 6:25-cv-00009-JDK

**DECLARATION OF ELIZABETH DOUGHERTY,**
**GENERAL COUNSEL AND CORPORATE SECRETARY,**
**BUSINESS ROUNDTABLE**

Pursuant to 28 U.S.C. § 1746, I, Elizabeth Dougherty, hereby declare as follows:

1.      I am the General Counsel and Corporate Secretary at Business Roundtable. Business Roundtable is a non-profit association comprised of more than 200 chief executive officers (CEOs) of America's leading companies, representing every sector of the U.S. economy.  Business Roundtable is headquartered in Washington D.C.

2.      I am over 18 years old.  This Declaration is based upon my personal knowledge and belief and/or upon my review of business records of Business Roundtable.  If called as a witness, I could and would testify competently thereto.

3.      Since 1972, Business Roundtable has worked to promote a thriving U.S. economy that creates economic opportunity for all Americans.  Business Roundtable's members work closely with policymakers to advance sound economic policies, including policies related to federal antitrust law.  To support that work, Business Roundtable engages in public advocacy and litigation on legal and policy issues relating to competition.  One area of Business Roundtable's focus has been the Federal Trade Commission's proposed and now final rule massively expanding the amount of documentary material and information that must be included in the initial premerger notification form for all HSR-reportable transactions.  Even under the agency's conservative estimate, the Rule's changes to the notification form will more than quadruple the average time and expense of preparing an HSR filing.  Business Roundtable filed a comment letter during the rulemaking stage opposing the rule and urging the agency to withdraw it.  Business Roundtable Comment (Sept. 27, 2023), https://www.regulations.gov/comment/FTC-2023-0040-0718.

4.      Many Business Roundtable members are CEOs of companies that regularly enter into merger, acquisition, or other transactions that meet or exceed the size thresholds

for filing a premerger notification form under the HSR Act and thus will be subject to the requirements of the Rule, including members for which frequent M&A activity is a regular and consistent feature of their business model. Consistent with their past levels of deal activity, member companies of Business Roundtable plan to engage in HSR-reportable transactions in the forthcoming months. Indeed, Business Roundtable members' companies have already engaged in HSR-reportable transactions this year that were subject to the Rule's requirements. These members have been or will be subject to the requirements of the Rule, and thus have incurred or will incur the substantially increased burden and expense necessary to complete the revised HSR notification form.

5.      Information about our members' HSR-reportable activity is highly sensitive. Public disclosure of members' near- and medium-term plans to engage in HSR-reportable activity could have a significant impact on the members' businesses, on potential transactions they are considering, and in some cases on public securities markets. Moreover, many of our members deal frequently with federal regulators, including the FTC in the context of HSR review, and are concerned that being identified in this suit could result in additional and unwarranted regulatory scrutiny. Accordingly, our members have asked me not to reveal their identities and to avoid providing unnecessary details that could be used to identify them, which I understand is not required under applicable law. Nevertheless, certain members have authorized disclosure of the following information to demonstrate that they will enter into HSR-reportable transactions and thus be harmed by the Rule.

6.      Member A is a healthcare company that regularly engages in M&A transactions, including HSR-reportable transactions, as part of its business model. Since 2015, Member A has engaged in more than 25 HSR-reportable transactions. Consistent with

its business model and historic level of activity, Member A plans to continue to engage in HSR-reportable transactions in the foreseeable future.

7.      Member B is a transportation company with over 10,000 employees in Texas.  Member B has engaged in several HSR-reportable transactions, as part of its business model, over the last 10 years. Consistent with its business model and historic level of activity, Member B plans to continue to engage in HSR-reportable transactions in the foreseeable future.

8.      Member C is a company in the financial sector that regularly engages in M&A activity as part of its business model and plans to engage in at least one HSR-reportable transaction in the foreseeable future.  Member C is therefore directly regulated and harmed by the Rule.  In addition, Member C regularly provides lending and other services in connection with HSR-reportable transactions and plans to continue to do so.  Because the Rule dramatically increases the costs associated with HSR-reportable transactions, Member C expects that the Rule will affect its business by deterring M&A activity that would otherwise have taken place, affecting the market for Member C's services and causing transactions for which Member C could have provided those services not to be consummated.

9.      These and other Business Roundtable members are harmed by the Rule, and that harm would be redressed by an order vacating the Rule and/or enjoining the FTC from requiring parties to HSR-reportable transactions to comply with it.  The FTC's massive expansion of the information and material required in the premerger notification form, which both the buyer and seller in virtually every HSR-reportable transaction must file, will make it far more costly for Business Roundtable members' companies to consummate such

3

deals.  The FTC itself estimates that the average time for all filers to complete the revised premerger notification form will nearly triple, from 37 hours to complete the existing form to 105 hours to complete the new form. 89 Fed. Reg. at 89,332.  For half of all reportable transactions, the FTC estimates that the time for the buyer to complete the form will increase to 158 hours, a 427% increase over the status quo.  *Id.*  When Business Roundtable members' companies enter into HSR-reportable transactions, they will experience these increased costs as a result of being subject to the Rule.

10.     Beyond these direct compliance costs, the Rule inflicts significant indirect costs on Business Roundtable members who enter into, or are even considering entering into, HSR-reportable transactions.  For example, the need to collect, review, analyze, and prepare the additional information required by the Rule will significantly extend and delay deal timelines.  Such delays may hamper the transacting parties' ability to obtain financing, increase the risk that news of a non-public deal will leak, and generally impede if not prevent consummation of the transaction.  By imposing all of these new direct and indirect costs, the Rule is likely to prevent consummation of at least some HSR-reportable transactions that Business Roundtable members' companies would otherwise have entered.

11.     In light of the above effects of the Rule, and based on consultation with the members of Business Roundtable, Business Roundtable directly advances its mission and the interests of our members by bringing this lawsuit to challenge the Rule.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 28, 2025, in Washington, D.C.


Elizabeth Dougherty