# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, BUSINESS ROUNDTABLE, AMERICAN INVESTMENT COUNCIL, and LONGVIEW CHAMBER OF COMMERCE, <br><br> *Plaintiffs*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION and ANDREW N. FERGUSON, in his official capacity, <br><br> *Defendants*. | Case No. 6:25-cv-00009-JDK |

**DECLARATION OF KELLY HALL, PRESIDENT AND CEO OF**
**PLAINTIFF LONGVIEW CHAMBER OF COMMERCE**

Pursuant to 28 U.S.C. § 1746, I, Kelly Hall, hereby declare as follows:

1.      I am the President and CEO of the Longview Chamber of Commerce.  In that capacity, I oversee all of the Longview Chamber's operations.  My business address is 410 N Center Street, Longview, TX 75601.

2.      I am over 18 years old.  This Declaration is based upon my personal knowledge and belief and/or upon my review of business records of the Longview Chamber.  If called as a witness, I could and would testify competently thereto.

3.      The Longview Chamber of Commerce represents over 1,000 businesses and professional organizations.  We routinely advocate in federal courts on matters of competition, free markets, and antitrust enforcement, including filing lawsuits challenging anti-business laws and regulatory actions.  The Longview Chamber's mission is to advocate for policies that promote economic development and job creation both in the Longview Trade Area, which includes Gregg County and 11 surrounding counties, and in the interconnected economic region, which includes the Dallas, Houston, and Shreveport metropolitan areas.  To further its mission and the interests of its members, the Longview Chamber regularly files litigation challenging harmful and misguided federal regulations. *See, e.g.*, *Ryan LLC* v. *FTC*, No. 24-10951 (5th Cir. 2024); *Minnesota Telecom Alliance* v. *FCC*, No. 24-1179 (8th Cir. 2024); *Longview Chamber of Commerce* v. *CFPB*, No. 24-915 (D.D.C. 2024); *Longview Chamber of Commerce* v. *OSHA*, No. 24-271 (E.D. Tex. 2024); *Longview Chamber of Commerce* v. *NLRB*, No. 24-40331 (E.D. Tex. 2024).

4.      On November 12, 2024, the Federal Trade Commission adopted a rule that amends the premerger notification form required under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (HSR Act), 15 U.S.C. § 18a.  *Premerger Notification; Reporting and*

1

*Waiting Period Requirements*, 89 Fed. Reg. at 89,216 (Nov. 12, 2024).  The Final Rule massively expands the amount of documentary material and information that must be included in the initial premerger notification form for all HSR-reportable transactions.  Even under the agency's conservative estimate, the Rule's changes to the notification form will more than quadruple the average time and expense of preparing many HSR filings.

5.     The Longview Chamber has members that regularly enter into merger, acquisition, or other transactions that meet or exceed the size thresholds for filing a premerger notification form under the HSR Act, including members for which M&A activity is a regular and consistent feature of their business model.  Longview Chamber members have already engaged in HSR-reportable transactions this year.  In addition, consistent with their past levels of deal activity, members of the Longview Chamber also plan to engage in HSR-reportable transactions in the forthcoming months.  These members have been or will be subject to the requirements of the Rule, and thus have incurred or will incur the substantially increased burden and expense necessary to complete the revised HSR notification form.

6.     Information about our members' HSR-reportable activity is highly sensitive. Public disclosure of members' near- and medium-term plans to engage in HSR-reportable activity could have a significant impact on the members' businesses, on potential transactions they are considering, and in some cases on public securities markets.  Moreover, many of our members deal frequently with federal regulators, including the FTC in the context of HSR review, and are concerned that being identified in this suit could result in additional and unwarranted regulatory scrutiny.  Accordingly, our members have asked me not to reveal their identities and to avoid providing unnecessary details that could be used

2

to identify them, which I understand is not required under applicable law. Nevertheless, certain members have authorized disclosure of the following information to demonstrate that they will enter into HSR-reportable transactions and thus be harmed by the Rule.

7.      Member A engages in M&A activity as part of its business model. Member A has engaged in multiple HSR-reportable transactions over the past ten years, including transactions involving companies with a presence in the Longview Trade Area and the surrounding economic region. Indeed, Member A has already engaged in at least one HSR-reportable transaction this year. Member A plans to continue to engage in a similar level of HSR-reportable activity going forward and intends to engage in at least one more HSR reportable transaction this year.

8.      Member B is a global telecom company with over 2,000 employees and 2,000,000 customers in Texas. Member B regularly engages in M&A transactions, including HSR-reportable transactions, as part of its business model. Since 2015, Member B has engaged in more than 25 HSR-reportable transactions as well as many other transactions below the HSR reporting threshold. Consistent with its business model and historic level of activity, Member B plans to continue to engage in HSR-reportable transactions in the foreseeable future.

9.      Member C is a private capital firm with an office in Dallas. Member C has at least 10 portfolio companies with a presence in Texas as well as subsidiaries of several other companies; together these companies provide over 2,400 jobs in Texas. Member C has looked at over 1,200 opportunities in Texas in the past 5 years. A number of these portfolio companies operate in the Longview Chamber's larger economic region. Member C engages in regular M&A activity as part of its business model. Since January 2020, Member C has

3

engaged in 19 HSR-reportable transactions, along with a number of other M&A transactions that did not meet the reporting threshold.  Going forward, Member C plans to continue to engage in a similar level of HSR-reportable activity and expects to enter into several HSR-reportable transactions in the next 12 months, including at least one by the end of 2025.

10.    Member D is a large company with significant operations in Texas and often engages in HSR-reportable transactions.  Consistent with its historic level of activity, Member D plans to continue to engage in HSR-reportable transactions in the foreseeable future.

11.    Member E is a company in the financial sector that has a number of business locations in Texas and provides services to companies with a presence in the Longview Trade Area and the surrounding economic region. Member E regularly engages in M&A activity as part of its business model and plans to engage in at least one HSR-reportable transaction in the foreseeable future.  Member E is therefore directly regulated and harmed by the Rule.  In addition, Member E regularly provides lending and other services in connection with HSR-reportable transactions and plans to continue to do so.  Because the Rule dramatically increases the costs associated with HSR-reportable transactions, Member E expects that the Rule will affect its business by deterring M&A activity that would otherwise have taken place, affecting the market for Member E's services and causing transactions for which Member E could have provided those services not to be consummated.

12.    Members A and E were members of the Longview Chamber prior to the filing of the original complaint in this action.  Members B, C, and D joined the Longview Chamber prior to the filing of the operative amended complaint.

13.     These and other Longview Chamber members are harmed by the Rule, and that harm would be redressed by an order vacating the Rule and/or enjoining the FTC from requiring parties to HSR-reportable transactions to comply with it.  The FTC's massive expansion of the information and material required in the premerger notification form, which both the buyer and seller in virtually every HSR-reportable transaction must file, will make it far more costly for Longview Chamber members to consummate such deals.  The FTC itself estimates that the average time for all filers to complete the revised premerger notification form will nearly triple, from 37 hours to complete the existing form to 105 hours to complete the new form. 89 Fed. Reg. at 89,332.  For half of all reportable transactions, the FTC estimates that the time for the buyer to complete the form will increase to 158 hours, a 427% increase over the status quo. *Id.*  When Longview Chamber members enter into HSR-reportable transactions, they will experience these increased costs as a result of being subject to the Rule.

14.     Beyond these direct compliance costs, the Rule inflicts significant indirect costs on Longview Chamber members who enter into, or are even considering entering into, HSR-reportable transactions.  For example, the need to collect, review, analyze, and prepare the additional information required by the Rule will significantly extend and delay deal timelines.  Such delays may hamper the transacting parties' ability to obtain financing, increase the risk that news of a non-public deal will leak, and generally impede if not prevent consummation of the transaction.  The Rule also imposes a significant opportunity cost to businesses, which must divert valuable director, officer, and employee time to preparing the premerger notification form instead of running the company.  The Rule will therefore likely deprive certain Longview Chamber members of the additional resources, talent, efficiencies,

and economies of scale that are gained through productive M&A activity.  As a result, the Rule will also limit the ability of certain Longview Chamber members to bring new and better products to more consumers and more markets.

15.    The FTC's expansion of the premerger notification form will harm the communities that make up the Longview Trade Area and interconnected economic region. Larger businesses utilize M&A to unlock efficiencies, enhance innovation, and expand operations.  Smaller companies, entrepreneurs, and early-stage investors benefit from opportunities for capital formation, liquidity, and growth, as well as the possibility of a future exit.  By facilitating the continued growth and development of all kinds of businesses, pro-competitive mergers and acquisitions benefit not only the relevant companies involved in the deal, but also their employees, their investors, their local communities, and ultimately the American consumers whom the antitrust laws are designed to protect.  The Rule will delay and prevent lawful HSR-reportable transactions, depriving the Longview Trade Area and interconnected economic region of the benefits of these pro-competitive mergers.

16.    In light of the above effects of the Rule, and based on consultation with the members of the Longview Chamber, the Longview Chamber directly advances its mission and the interests of our members by bringing this lawsuit to challenge the Rule.  As mentioned above, the Longview Chamber's mission is to promote economic development and job creation both in the Longview Trade Area and the larger, interconnected economic region.  The Longview Chamber fulfills that mission by taking action to ensure that businesses large and small are fully able to compete, grow, create jobs, and innovate through deals that do not pose competitive concern.  Such actions help our members to better serve our communities.  The Longview Chamber also directly advances the interests of its

6

members by taking action to decrease the direct and indirect costs imposed on our members by local, state, and federal regulations—especially where, as with the Rule, those costs are disproportionate to any regulatory benefit.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 29, 2025, at 410 N Center St., Longview, TX 75601.

_____

Kelly R. Hall