# Exhibit 3

**COMMENTS OF THE AMERICAN BAR ASSOCIATION'S ANTITRUST LAW SECTION ON THE FEDERAL TRADE COMMISSION'S PROPOSED AMENDMENTS TO THE PREMERGER NOTIFICATION RULES**

September 13, 2023

> *The views stated herein are presented on behalf of the Section of Antitrust Law. They have not been reviewed or approved by the House of Delegates or the Board of Governors of the American Bar Association and, accordingly, should not be construed as representing the position of the American Bar Association.*

## I.     Introduction[1]

The American Bar Association's Section of Antitrust Law ("Section") appreciates this opportunity to comment on the proposed revisions to the premerger notification and report form ("Form") pursuant to the Hart-Scott-Rodino ("HSR") Antitrust Improvements Act of 1976 (the "HSR Act").[2]  The Section is the world's largest professional organization for antitrust and competition law, trade regulation, consumer protection and data privacy as well as related aspects of economics.  Section members, numbering over 9,000, come from all over the world and include attorneys and non-lawyers from private law firms, in-house counsel, non-profit organizations, consulting firms, federal and state government agencies, as well as judges, professors, and law students.  The Section provides a broad variety of programs and publications concerning all facets of antitrust and the other listed fields.  The Section's members have extensive experience in filings under the HSR Act; indeed, we believe that the overwhelming majority of premerger notification filings are made by members of the Section. The Section hopes these comments will be useful to the Federal Trade Commission ("FTC" or the "Commission") and the Antitrust Division of the Department of Justice ("DOJ"; together with FTC, the "Agencies") as they finalize the new Form.

The Section appreciates the Agencies' view that the current HSR Form does not provide sufficient information to determine whether further review of a notified transaction's potential effect on competition is necessary.  The Section acknowledges that some of the proposed information collections will be useful in that respect.  However, other proposed changes appear to require information only marginally helpful while imposing significant cost and timing burdens, especially as to those transactions that do not present any competitive concerns.  The Agencies appear to recognize some of the burdens, but the NPRM suggests that the Agencies may not appreciate the full scope of the burdens that would be imposed by these revisions.

---

[1] Please note that any capitalized terms used throughout and not defined herein have the meaning ascribed to them in the Notice of Proposed Rulemaking (88 Fed. Reg. 42178) or the rules promulgated under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (16 C.F.R. Parts 801, 802, and 803).

[2] Throughout this comment, the Section refers to the preamble to the proposed amendments to 16 CFR Parts 801 and 803 (88 Fed. Reg. 42178, 42178-42209) as the "NPRM," and the proposed amendments to 16 CFR Parts 801 and 803 (88 Fed. Reg. 42178, 42209-42218) as the "Proposed Rule".

1

effective and efficient screening for transactions that require an in-depth investigation,"[20] which may introduce the potential for increased requests for acquiring persons to "pull and refile" to provide the Agencies with additional time to process such filings, and/or issuance of "technical" Second Requests due to Agency staff being unable to complete their review within either the initial or second waiting period (if the acquiring person conducts a pull and refile).

### A. Burden Associated with Certain Requirements Would Outweigh Their Usefulness in Assessing Whether a Second Request Is Warranted

Below we have highlighted several proposed requirements that introduce significant burden to filing parties and which likely have little utility in determining whether to investigate a proposed transaction further. The proposed revisions to the Form are addressed below in the order in which they appear in the Proposed Rule.

#### 1. Entities within the Acquiring Person and Acquired Entity

The Proposed Rule would require that in addition to listing the name, city, state/country, and zip code of entities within the acquiring person or acquired entity, filing parties list all names under which the entities do business or have done business within the past three years. This requirement is not limited in any way, for example, to entities that either overlap or have a supplier relationship with the other party. Maintaining and disclosing this information in every filing is overly burdensome compared to the utility it will have for the Agencies' in determining whether to investigate a transaction further.

#### 2. Organizational Charts

The Proposed Rule would require an ultimate parent entity that is a fund or a master limited partnership to provide an organizational chart sufficient to identify and show the relationship of all entities that are affiliates or associates (as defined by the HSR Rules). Such organizational charts sufficient to identify all entities that are affiliates or associates may not exist in the ordinary course of an acquiring fund's or acquiring master limited partnership's business. Further, the analysis of which entities are associates is complex and may not be readily synthesized to the format of an organizational chart. The Proposed Rule requests a narrative response describing the ownership structure of the acquiring entity, and entities and associates with investments in other entities that overlap with the acquired entity is already requested elsewhere in the Form. Further, information regarding vertical relationships between the parties is also requested elsewhere in the Proposed Rule. However, requiring organizational charts is not limited in any way, for example, to overlapping entities, and is superfluous to other requirements of the form and burdensome compared to the utility it may have for the Agencies in determining whether to issue a Second Request.

---

[20] 88 Fed. Reg. 42,178 (Jun. 29, 2023) at 42,195.

       3.       Other Types of Interest Holders That May Exert Influence, Officers, Directors, and Board Observers

The proposed requirements to identify certain "other interest holders that may exert material influence on the management or operations of the acquiring person," including certain information related to persons or entities that do the following with respect to the acquiring entity and any entities that control, or are controlled by the acquiring entity: (i) provide credit; (ii) hold non-voting securities, options, or warrants; (iii) are board members or board observers, or have nomination rights for board members or board observers; or (iv) have agreements to manage entities related to the transaction. Some of this information, such as credit relationships, equity holders, or other governance rights, may not be available at the time of filing leaving filing parties susceptible to claims of noncompliance. Further, it is unclear how the Agencies will use this information to assess whether an interest holder that may exert influence presents a potential anticompetitive effect since the Agencies will not readily have information regarding potential overlaps, vertical, or other market relationships between that interest holder and the acquired entity. Ultimately the burden of collecting this information may be disproportionate to the value the Agencies will receive from what will likely be an incomplete picture.

The Proposed Rule also would require identification of the officers, directors, or board observers within the two years prior to filing are very subjective and difficult to gather, especially from non-employee directors, again leaving filing parties susceptible to claims of noncompliance. While acknowledging the Agencies' rationale that there may be relationships beyond the minority holder relationships (as required in the current Form) that are potentially of competitive significance, receiving lists of dozens, if not hundreds, of officers, directors, and board observers, especially across larger or more diffuse organizations with many subsidiaries (including a two year lookback period that may not be feasible to comply with in many instances) to screen for the possibility of current interlocking directorate violations under Clayton Act § 8 could impose substantial burdens and provide little practical utility. Further, there is no limitation for officer positions or directorships in connection with charitable or not-for-profit organizations that would have no bearing on a competitive analysis. For example, if an officer, director, or board observer of an entity within the acquiring person also serves as an officer of a local little league team, or as a director on the board of a local arts organization, these positions would need to be listed, further complicating complete collection of the proposed required information.

       4.       Transaction Diagram

The Commission proposes that filing persons provide a diagram of the deal structure along with a corresponding chart with the relevant entities and individuals involved in the transaction. While it would not be a burden to produce a final chart if one has been agreed to by the filing parties during diligence, where such a diagram and chart were not created or finalized during transaction diligence the Agencies could still benefit from the most recent draft at the time of filing HSR, even if it does not reflect all of the entities or minority ownership levels that may ultimately exist at closing.

Many times these charts are drafted by outside tax advisors to show the pre-transaction reorganization needed to achieve the desired tax structure and benefits. Very rarely, if ever, are they drafted to achieve antitrust or competition objectives. Where all or a majority of the