# Exhibit 7



# U.S. Chamber HSR/Merger Guides Practitioner Survey

## Background Questions

*1) Are you involved in submitting proposed transactions as an*

(a) in-house counsel -41%

(b) external counsel -58%

(c) economist or other professional -1%

*2) Are you a former FTC or DOJ official having worked at either agency in a capacity where you were involved in merger reviews?*

Yes -36%
No - 64%

>  *If yes, please identify whether you served as a…(indicate all that apply).*
>
>  (a) staff lawyer, -44%
>
>  (b) mid-level manager, such as section chief, assistant director, or deputy assistant director, -36%
>
>  (c) senior manager, such as a deputy director, director, or above -20%
>
>  *If yes, please identify whether your service coincided with the following presidential administrations…(indicate all that apply).*
>
>  (1) George H. W. Bush; 7%
>
>  (2) Bill Clinton; 33%

September 19, 2023

(3) George W. Bush; 53%

(4) Barack Obama; 67%

(5) Donald Trump; 33%

(6) Joe Biden; 20%

**3) Over your career how many proposed transactions have you been in some capacity involved in?**

(a) 1-10 -3%
(b) 11-50 -19%
(c) 51-100 -19%
(d) more than 100 -59%

# HSR Proposed Rule

**4) As you answer the below questions about time and cost to an HSR filing, what size transaction are you generally thinking about?**

Smaller transaction, less than $500 million – 30%
Medium Sized Transaction, between $500 million and $2 billion –51%
Larger deals, more than $2 billion -19%

**5) For the current form: How many <u>hours</u>, on average, do a company's <u>internal personnel</u> presently spend preparing information to submit a transaction as part of its initial filing?**

Average 30.4 hours

**6) For the current form: How many <u>hours,</u> on average, do merging parties <u>outside counsel</u> presently spend preparing a submission for a transaction as part of an initial filing?**

Average 54.3 hours

**7) For the current form: How much does it <u>cost</u> a company, on average, to prepare information to submit a transaction as part of its initial filing in terms of external costs, such as attorney fees and economic consulting fees?**

Average $79,569

September 19, 2023

**8) For the current form:** How many days, on average, does it take a company to prepare information to submit a transaction as part of its initial filing?

*Average 10.7 days*

**With respect to transactions that would be submitted for review under the proposed revised HSR form, and in your best estimation,**

**9) How many hours, on average, would a company's internal personnel spend preparing information to submit a transaction as part of its initial filing?**

Average 131.9 hours

**10) How many hours, on average, would merging parties' outside counsel spend preparing a submission for a transaction as part of an initial filing?**

Average 194.6hours

**11) How much would it cost a company, on average, to prepare information to submit a transaction as part of its initial filing in terms of external costs, such as attorney fees and economic consulting?**

Average $313,828

**12) How many days, on average, would it take a company to prepare information to submit a transaction as part of its initial filing?**

Average 32.7 days

**13) How much is the average billable hour for outside counsel paid to prepare a filing?**

Average $936

September 19, 2023

**14) Do you believe deficiencies in the current HSR form are in fact allowing competitively problematic deals above the HSR threshold to escape antitrust review?**

Yes – 12%
No - 88%

> *If yes, what changes to the current HSR form would help identify such deals?*
>
> Support expressed for more information gathered where there are overlaps

**15) Do you expect because of the proposed changes to the form that even the most basic transaction will now require the hiring of antitrust expertise?**

Yes – 99%
No – 1%

**16) How would you say the new form will impact the timeliness of the merger process?**

Timeliness Highly Improved -0%
Timeliness Improve  - 0%
No Change - 4.4%
Timeliness Decreased – 7.4%
Timeliness Adversely Impacted – 88.2%

**17) Do you believe the Antitrust Division of the Department of Justice and the Federal Trade Commission effectively use voluntary access letters to collect additional information outside of issuing a formal second request?**

Yes – 90%
No – 10%

> *Please elaborate on your response*

September 19, 2023

> Lots of praise for the role VALs play.  Some criticism that they are overused or don't seek information that is that useful.  Also views that they are used to craft second request.

**18) Under the proposed form, are you concerned about the agencies potentially "bouncing" a filing and having to engage in a lengthy EU-style iterative process to "perfect" filings?**

Yes - 96%
No - 4%

**19) Please add any additional comments you may have regarding the proposed form.**

- Agencies seem to think the parties have information that is not readily available.
- Many of the changes seem to be directed at private equity, minority or passive investments, without clear evidence to support concerns.
- Changes are subjective on information sought, ripe for abuse
- If there is a problem, why are the agencies not challenging consummate deals
- Massively excessive/unnecessary
- Need iterative approach, overcorrection on the part of the agencies
- Chill M&A, try to move the US to preapproval like Europe in contravention to HSR Act
- Creates lots of uncertainty to file, unable to make a complete, perfect filing
- Prolong HSR process

Effect of the **New Form** on the **Agency** Review
This portion only completed by those with agency experience

September 19, 2023

**20) With the <u>current form</u>, how many hours, on average, do agency staff spend reviewing information submitted by transacting parties as part of their initial filing (in your best estimation)?**

Average 10.9 hours

**21) With the <u>proposed form</u>, how many hours, on average, would agency staff spend reviewing information submitted by transacting parties as part of their initial filing (in your best estimation)?**

Average 35.9 hours

**22) If the <u>proposed form</u> were adopted, and at the <u>current staffing levels</u>, would the agencies have the capability of completing their initial review within the statutory time frame?**

Yes - 30%
No  - 70%

>  **If no:**
> 
> **If the current staffing levels remain the same, how long would the statutory time frame have to be extended to allow agencies to complete their initial review?**
> 
> An additional roughly 60 days
> 
> **Alternately, if the statutory time frame remains the same, how much would agency staffing levels have to increase to allow the agencies to complete their review within the allotted time? (Please express your answer as a percentage increase of staff dedicated to the task of reviewing incoming merger notifications).**
> 
> Average answer roughly doubling staff

September 19, 2023

***23) On balance, do you support the proposed new form?***

Yes – 3%
No – 97%

# Merger Guidelines

***24) In your view, do the proposed guidelines accurately reflect the current state of antitrust law?***

Strongly Agree – 0%
Agree – 4.8%
Neither agree nor disagree – 8.1%
Disagree – 37.1%
Strongly disagree – 50%

***25) In your view, do the proposed guidelines appropriately rely upon economic analysis?***

Grounded in Sound Economic Analysis  - 0%
Mostly Aligned with Economic Analysis – 1.6%
Moderate Integration of Economic Analysis – 14.5%
Partially Divorced from Economic Analysis – 43.5%
Divorced from Economic Analysis – 40.3%

***26) Thinking about this draft guidance in relationship to the past guidance, how are these proposed guidelines likely to guide companies and practitioners in determining how to structure and whether to proceed with transactions?***

More Effective Guidance – 0%
Slightly Improved Guidance – 11.6%
Similar Guidance – 13%
Some Decrease in Guidance Quality – 29%
Significant Departure from Previous Guidance – 46.4%

September 19, 2023

**27) In your view, how will the proposed guidelines be interpreted by the courts?**

Likely to Reject or Ignore – 26.1%
Limited Relevance – 49.3%
Moderate Influence – 18.8%
Noticeable Impact – 4.3%
Strong Influence – 1.4%

**28) How likely are you to agree with the following statement:**

*In the United States over the past 40 years under previous administration, antitrust has been well insulated from political agendas.*

Strongly Agree – 17.6%
Agree – 52.9%
Neutral – 17.6%
Disagree – 10.3%
Strongly Disagree – 1.5%

*The proposed guidance is another example of an increasingly politicized approach to antitrust enforcement.*

Strongly Agree – 53.6%
Agree – 31.9%
Neutral – 7.2%
Disagree – 5.8%
Strongly Disagree – 1.4%

**29) In your view, if implemented, the proposed guidelines would likely do which of the following:**

Better promote the interests of consumers, investment, innovation and economic growth by effectively weeding out problematic mergers. -7%

September 19, 2023

Reduce the focus on the consumer, inject uncertainty into merger policy, and increase the role of government in deciding the fate of mergers, including those that present no serious threat to competition. -93%

### 30) Please add any written comments you may have regarding to the proposed guidelines.

Only a small handful of responses were provided. Responses were in opposition to the guidelines, the dated cases that are cited, pointing out the courts have already rejected them in the cases that have been brought, and observations that the guidelines reflect what the current leadership at DOJ/FTC want to believe.

### 31) Finally, with respect to both the proposed form and the proposed revised merger guidelines, do you believe that they represent a political agenda to chill <u>all</u> merger activity?

Yes – 81%
No – 19%

September 19, 2023