# Exhibit 11

**NATIONAL ASSOCIATION OF Manufacturers**

**Charles Crain**

*Vice President,
Domestic Policy*

September 27, 2023

Federal Trade Commission
Office of the Secretary
600 Pennsylvania Avenue NW
Suite CC–5610 (Annex H)
Washington, DC 20580

      Re:     16 CFR Parts 801-803—Hart-Scott-Rodino Coverage, Exemption, and Transmittal Rules, Project No. P239300

To whom it may concern:

The National Association of Manufacturers ("NAM") appreciates the opportunity to provide comment to the Federal Trade Commission ("FTC") and the Antitrust Division of the Department of Justice ("DOJ") (the "Agencies") on the proposed amendments to the pre-merger notification rules (the "Rules") that implement the Hart-Scott-Rodino ("HSR") Antitrust Improvements Act.[1]

The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States. The NAM is the largest U.S. manufacturing association, representing small and large manufacturers in every industrial sector and in all 50 states. The HSR Rules have a significant impact on manufacturers in the United States. Transactions that undergo antitrust review by the Agencies— including mergers and acquisitions as well as certain capital investments and licensing arrangements—are critical to the growth of manufacturing businesses across the country.

Unfortunately, the proposed amendments to the HSR Rules would stifle job-creating growth in the manufacturing industry without any corresponding benefit to the Agencies, merging parties, or the public. The new and unduly burdensome information and processes required by the amendments represent a major overhaul of established, well-understood standards that have been relied upon by businesses and regulators for more than 45 years. If adopted, the proposal would dramatically increase the information that merging entities would be required to provide to the Agencies before consummating a transaction, including for the vast majority of transactions that pose no antitrust issues and that may increase competition. Manufacturers will experience substantial cost increases as a result, with hundreds of millions of dollars or more being diverted toward lawyers and consultants and away from manufacturing growth. Further, potential transactions will be significantly delayed if the amendments are adopted as proposed, postponing the opportunities and job-creating investments that these transactions can create.

The NAM is concerned that the proposed amendments will not enable the Agencies to better identify and investigate potentially anticompetitive transactions, but rather will delay and disincentivize *all* business combinations in the manufacturing sector. Such an approach ignores the many benefits that mergers and acquisitions ("M&A") create for manufacturers of all sizes, and the NAM is disappointed that the Agencies appear to be taking steps to limit growth and innovation in U.S. manufacturing. Pro-growth, pro-competitive transactions in manufacturing set the stage for business

---

[1] *Premerger Notification; Reporting and Waiting Period Requirements*, 88 Fed. Reg. 42178 (29 June 2023). RIN 3084-AB46; *available at* https://www.govinfo.gov/content/pkg/FR-2023-06-29/pdf/2023-13511.pdf.

1

efficiencies, enhanced product offerings, and reduced costs for customers. Healthy M&A activity in the industry also aids company formation and capital raising earlier in a business's life cycle, as entrepreneurs and early-stage investors often depend on M&A for an exit opportunity. Conversely, limiting business combinations by enforcing the one-size-fits-all standards contemplated by the proposed rule could disincentivize early-stage innovation; the breadth of the proposal could also implicate collaborations and licensing arrangements that are similarly important to innovative businesses.

The NAM respectfully encourages the Agencies to reconsider the approach to pre-merger review embodied in the proposed rule. The proposed amendments appear to establish a presumption that M&A activity is inherently dubious, and they would treat all reportable transactions as deserving of an extensive degree of disclosure and scrutiny far in excess of any actual competitive risks they pose. Rather than seek to stifle business combinations across the board, and the associated opportunities for efficiency, growth, and job creation throughout the manufacturing industry, the Agencies should instead focus their attention on particular transactions that actually pose a threat of competitive harm to American consumers. Limiting new regulatory burdens on the thousands of transactions that pose no threat to consumers will protect businesses' ability to grow and drive economic expansion in the United States.

Manufacturers thus encourage the Agencies to withdraw the proposed amendments. At a minimum, any amendments adopted must be more narrowly tailored than the current proposal. The NAM urges the Agencies to appropriately calibrate the HSR Rules to enable pre-merger review to identify transactions with a greater risk of anticompetitive effects without subjecting pro-consumer transactions to significant costs and delay.

### I.     The proposed amendments will dramatically increase costs on manufacturers, effectively imposing a transaction tax on all potential deals.

In the proposal, the Agencies estimate that the new requirements will increase the time needed to complete an HSR filing by, on average, 107 hours. More complex transactions—which the Agencies recognize account for nearly half of all filings—could see an increase of as much as 222 hours, according to the proposal. Using the Agencies' estimate of 37 hours to complete a filing under the current rules, the proposed amendments represent a four- to seven-fold increase in the time necessary to prepare an HSR filing. And these estimates likely understate the increased burden associated with the proposed changes.

Adding hundreds of hours of work to the filing process will impose a *de facto* tax on each transaction. The expansive nature of the proposed rule and the ambiguity and complexity inherent in many of its provisions will ensure that significant funds are diverted from company growth. And companies are likely to spend far more time on each deal than the conservative estimates made by the Agencies. Indeed, the Agencies' estimates likely understate both the time it takes to comply with the current HSR requirements as well as the time necessary to comply with the proposed amendments, given that the methodology for determining these estimates appears to have been an informal survey of Agency staff. What is clear is that the new transaction tax will apply to every single reportable deal, no matter its size, the market positions of the merging parties, or the likelihood that it would merit additional scrutiny from the Agencies.

In practice, the proposed amendments represent a fundamental overhaul of the HSR filing process, completely upending the norms and practices with which all American companies are familiar. Merging parties, as well as the Agencies themselves, are well-acquainted with the current Rules and what information and procedures are required to satisfy them. But the novel regime being proposed would lead to regulatory uncertainty and result in time and cost increases far in excess of the 222-hour ceiling estimated by the Agencies.

Many of the proposed requirements, discussed in more detail below, represent structural changes to the information necessary for HSR review, such as the expanded document production requirements, the new obligations to provide competition and strategic narratives about a deal, the mandate related to affiliated entities' officers and directors, and the extension of antitrust review to include labor and employment policy goals. The information required by these significant changes to the HSR Form far exceeds what is currently necessary for most of the Agencies' in-depth antitrust investigations, yet it would be required in merging entities' *initial* filings. These requirements will reshape the pre-merger filing process and expand the boundaries of pre-merger review while increasing the cost and time burdens associated with the HSR process accordingly, without uncovering much if any information relevant to the Agencies' competition analysis.

Other provisions in the proposal will necessitate hours and hours of non-substantive recordkeeping, processes, certifications, and verifications. For example, tracking down every officer, board member, or board observer for every subsidiary corporation within a merging entity, which for manufacturers can reach hundreds of individuals, serves no rational substantive purpose. Similarly, companies will be required to identify on a routine basis the name, title, and company of any internal staff members who receive or supervise the preparation of certain third-party documents. There is minimal if any value to the Agencies having this information for every single reportable transaction (and if and when it might have value, the Agencies could simply request it), but collecting and filing a comprehensive list of all the people who may have "supervised" the creation of these documents will require many hours of work.

Overall, the breadth and depth of the proposed amendments will make every reportable transaction similarly costly and burdensome as the limited number of transactions that, under the current Rules, involve some form of follow-up or additional scrutiny from the Agencies. These additional costs will not actually help to expedite transaction review (the purported justification for the proposal); the deluge of irrelevant information required by the proposed amendments will likely do the opposite. Indeed, the Agencies' estimates of the burdens associated with the proposal likely significantly understate its time and cost burden on merging parties. Once an HSR filing is made, this extensive burden will shift to the Agencies, raising the possibility of further delays.

The proposal seeks to align U.S. pre-merger review with requirements in the E.U., but the European Commission receives roughly 10% of the merger filings that the FTC and the Antitrust Division of the DOJ must process. Further, the E.U. allows transactions with limited horizontal overlap or low market share to use a "short form," which is notably not permitted under the one-size-fits-all amendments proposed by the Agencies. Importing E.U.-style merger review to the U.S. is simply not practical for the Agencies or for businesses in the United States.

The NAM respectfully encourages the Agencies not to impose what is effectively a transaction tax on all potential mergers and acquisitions in the manufacturing industry. Further, manufacturers urge the Agencies to reconsider the economic analysis underpinning the proposed rule in order to better reflect the significant delays, and associated cost increases, attributable to the proposal. Armed with more realistic estimates of the rule's time and cost burdens, the NAM encourages the Agencies to rescind or significantly rework the proposed amendments to the HSR Rules.

    II.    **The proposed amendments will add significant complexity to the HSR filing process, ultimately delaying or disincentivizing transactions that are critical to manufacturing growth.**

M&A activity allows companies of all sizes to evolve and grow, leading to downstream effects that benefit all Americans, including job creation, investment in research and development, and economies of scale and scope that produce lower prices and create greater choice for consumers.

The economic efficiencies driven by successful business combinations allow companies to innovate for the future.

This is true for manufacturers of all sizes. Large companies often seek acquisition targets to expand into new markets or make their supply chain more efficient. These business combinations can expand product offerings for consumers and reduce prices due to increased efficiency. Small businesses benefit from growth opportunities associated with business combinations, and M&A allows their early-stage investors an exit opportunity—ultimately supporting capital formation at all stages of a company's life cycle, including for entrepreneurs and start-ups. The availability of late-stage capital via M&A attracts early-stage funding and ensures that innovators can raise the capital necessary for next-generation breakthroughs.

The NAM is disappointed that the Agencies have adopted an adversarial stance toward merger activity in the manufacturing industry. Manufacturers strongly support robust enforcement of antitrust law to prevent anticompetitive deals that could harm consumers. However, the proposed amendments will make it more difficult for companies to combine efficiently, as increasing the price of consummating a transaction by definition decreases the value of a deal. The NAM is concerned that the Agencies may be utilizing the HSR Rules, which were authorized by Congress to help the Agencies investigate potentially anticompetitive deals, to chill merger activity writ large. The effect of the amendments will be that business combinations will be more costly and difficult, either delaying transactions or halting them altogether.

Critically, the proposed rule is not appropriately calibrated to the anticompetitive risk of the thousands of deals to which it will apply. At present, approximately 2% of proposed reportable transactions receive a Second Request indicating that the deal may pose some anticompetitive concerns and thus require enhanced scrutiny from the Agencies.[2] In 2021, there were only 65 Second Requests across the 3,520 HSR filings the Agencies received.[3] But under the proposed rule, 100% of HSR transactions will face enhanced filing burdens at the initial filing stage, requiring significant additional work on the part of all merging parties. This approach will do little to protect consumers, as the Agencies already have the ability to flag transactions that may harm consumers, and they exercise such discretion only in the limited instances where there is a plausible antitrust theory of harm. And the new information required under the proposal, while difficult and costly to collect, will not provide much if any useful insight as to a transaction's competitive effect—particularly for transactions where it is apparent from the materials already collected by the Agencies under the current standards that the transaction is unlikely to raise any anticompetitive concerns. Instead, the proposed rule's complicated and burdensome requirements will increase costs for merging entities and significantly delay, or even disincentivize, deals that could benefit consumers, workers, and the U.S. economy.

As noted, the proposal estimates that, on average, preparing an HSR filing under the proposed amendments will take quadruple the time currently required. And for more complex transactions, which the proposal estimates account for nearly half of all HSR filings, the process to gather and prepare all the information required under the amendments will take *seven times* as long as it does currently. Such a dramatic expansion in filing requirements represents a significant change in the pre-merger process. Even using the Agencies' conservative estimates of time increases, filings will be delayed by weeks or months. These delays represent a significant cost increase for merging entities; in addition, putting all reportable deals on hold for weeks on end could threaten the underlying economics of the deal itself—resulting in regulatory overreach chilling competitively

---

[2] *FTC, DOJ Issue Fiscal Year 2021 Hart Scott Rodino Premerger Notification Report* (10 February 2023). Federal Trade Commission. *Available at* https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-doj-issue-fiscal-year-2021-hart-scott-rodino-premerger-notification-report.

[3] *Ibid.*

neutral and pro-competitive deals. Critically, these delays are in service of collecting information that is not necessary for the Agencies to understand the competitive impact of a potential transaction, particularly given the extensive information already required to be provided under the current HSR Rules and the Agencies' existing ability to request further information.

Further delays are likely beyond what is contemplated by the proposed rule. First, as noted, it is likely that the Agencies' estimates understate the true burden of the proposal. The invasive and complicated nature of many of the new requirements, when applied to companies' complex organizational structures, will likely lead to delays (and associated cost increases) in excess of the Agencies' expectations. For example, new requirements related to Item 4 responsive documents, officers, directors, and board observers of the merging entities' subsidiaries, agreements between the merging parties and their subsidiaries, and horizontal and vertical industry overlaps will necessitate broad and deep investigations that are more difficult and time-consuming than the proposed rule acknowledges. Further, the NAM is concerned that the Agencies' methodology in determining the proposal's impact on timing appears to have consisted solely of an informal "canvas" of Agency staff rather than a more rigorous examination of the new processes and procedures required by the amendments.

Additionally, the breadth, complexity, and opacity of the new requirements raise the possibility that the Agencies will deem merging parties' filings to be incomplete once filed, even when the parties engage in good faith and make a reasonable effort to comply with the HSR Rules. Such a determination would prevent the 30-day review clock from starting, leading to an indeterminate period of back-and-forth between the filers and the Agencies before the filings are deemed to be satisfactorily complete. Such delays are not reflected in the proposed rule's time estimates, but present a significant risk to merging parties—both in terms of the additional costs and time needed to satisfy the new requirements, and the potential that a deal languishes indefinitely waiting for the Agencies to start the 30-day clock.

In short, the burdens under the proposed rule will be substantial. And it is not likely that the new information required under the amendments will provide new useful insights into the competitive impact of a potential transaction: under the current standards, the Agencies can and do request information necessary for their review. The proposed rule notes that the Agencies already find it difficult to process the HSR filings they receive; it is likely that the deluge of new information and documents required by the proposal will make timely pre-merger review even more difficult. Additionally, the disclosures required are in many cases either duplicative of information already required to be filed or disconnected from the actual competitive impacts of a deal—in either case, the costly and burdensome process undertaken by merging parties will not result in useful information for the Agencies' review process.

The Agencies can already access all the information they need for pre-merger review by engaging with merging parties on a voluntary basis during the waiting period or by utilizing the Second Request process. There is simply no need for such a complex and comprehensive overhaul of the HSR Rules.

The NAM is concerned that the proposed amendments to the HSR Rules would chill business combinations that otherwise would benefit growth and job creation in the manufacturing industry— and thus harm manufacturers' ability to provide increased choice and innovative new products to consumers. Accordingly, manufacturers respectfully encourage the Agencies to withdraw, or at a minimum significantly narrow, the proposed rule.