# Exhibit 16



**FEDERAL TRADE COMMISSION**
WASHINGTON. D. C. 20580

OFFICE OF THE SECRETARY

Honorable James O. Eastland
President Pro Tempore
United States Senate
2241 Dirksen Office Building
Washington, D.C.  20510

Honorable Thomas P. O'Neill, Jr.
Speaker of the House of Representatives
2231 Rayburn House Office Building
Washington, D.C.  20515

Gentlemen:

Section 201 of the Hart-Scott-Rodino Antitrust Improvements
Act of 1976, Pub.L. 94-435, added a new § 7A to the Clayton
Act, 15 U.S.C. § 18A (hereinafter referred to as "the
Act").  Subsection (j) of the Act provides as follows:

Beginning not later than January 1, 1978, the
Federal Trade Commission, with the concurrence
of the Assistant Attorney General, shall annually
report to the Congress on the operation of this
section.  Such report shall include an assessment
of the effects of this section, of the effects,
purpose, and need for any rules promulgated
pursuant thereto, and any recommendations for
revisions of this section.

This is the first annual report to the Congress mandated by
subsection (j) of the Act.

The Act created a mechanism under which persons of
specified size or larger, who intend to make stock or asset
acquisitions of specified size or larger, must report their
intentions to the Antitrust Division of the Department of
Justice and to the Federal Trade Commission and must thereafter
wait a prescribed period of time before consummating the
transaction.  That waiting period may be extended by either
enforcement agency by means of a request for additional
information.  The Act contains eleven specific types of
exemptions, along with a grant of rulemaking authority to
the Federal Trade Commission to define any terms used in the
Act, to create additional exemptions, and generally to carry
out the purposes of the Act.

The Act provides for expedited consideration by a federal district court in the event that either agency seeks a preliminary injunction to prevent consummation of a proposed acquisition. It also contains penalty and enforcement provisions, a requirement that information filed by reporting persons be kept confidential, provisions clarifying the relationship between the Act and other substantive and procedural aspects of traditional antitrust law, and the requirement of an annual report.

The Act was signed by the President on September 30, 1976. On December 15, 1976, the Federal Trade Commission, with the informal concurrence of the Assistant Attorney General in charge of the Antitrust Division, issued proposed rules and a proposed Notification and Report Form for public comment; the proposed rulemaking was published in the Federal Register of December 20, 1976 (see attachment I). The thirty-day comment period was extended by the Commission on January 12, 1977, and expired on February 18, 1977. Approximately 130 comments were received in response to those proposed rules and form.

Because of the extensiveness of public comment, it became clear to the Commission that some substantial revisions would have to be made in the proposed rules. On July 25, 1977, the Commission approved revised proposed rules and a revised proposed Notification and Report Form and determined that additional public comment thereon would be desirable. The revised proposed rules and form were published in the Federal Register of August 1, 1977 (see attachment II), and a thirty-day comment period began on that date. */ In response to numerous requests for additional time for comment, the Commission on August 23, 1977, extended the comment period by thirty days, through September 30, 1977. A total of 116 comments were received during the second comment period.

The process of preparing rules to implement the Act has been time consuming for several reasons. First, the Act covers all types of acquisitions of assets or of voting securities -- acquisitions by corporations, partnerships and natural persons, acquisitions directly from the owner or issuer, acquisitions of voting securities from third parties or in the open market, acquisitions by means of tender offer or negotiated sale, acquisitions by or from foreign parties,

---

*/ At the time of publication, the Commission staff also made available a side-by-side comparison of the revised proposed rules with those originally proposed (see attachment III).

acquisitions by affiliates, and others. Each of these, and many others, have their own peculiar factual settings, of which the rules must take account.

Second, there are a large variety of other situations where the extent and type of notification appropriate under the Act is affected by the existence of other statutes and other regulatory systems. Some of these underlie particular exemptions appearing in subsection (c) of the Act. Others may suggest the advisability of creating additional exemptions by rule.

Third, the infinite variety of existing business practices and forms of organization may in some cases permit or require variations in reporting obligations, depending upon the likelihood that certain types of acquisitions may raise anticompetitive problems, the extent to which certain types of acquisitions occur in the ordinary course of business of one or more of the parties, and the relationship between the parties to the transaction.

Finally, the drafting of regulations implementing the Act involves the attempt to strike what is often a difficult balance between the need of the enforcement agencies for "such documentary material and information relevant to a proposed acquisition as is necessary and appropriate to enable [them] to determine whether such acquisitions may, if consummated, violate the antitrust laws," */ and the cost to the persons who must provide such information. The process of gathering sufficient information to determine where this balance may be struck has been a sizeable task.

At the present time, the staffs of the Commission and of the Antitrust Division are working on revisions of the rules and form. Following conditional approval of the rules and form by the Commission and conditional concurrence by the Assistant Attorney General in charge of the Antitrust Division, the form will be submitted to the General Accounting Office for consideration under the Federal Reports Act, 44 U.S.C. § 3502. While that review, which must be completed within 45 days, is pending, the staff will complete preparation

---

*/    § 7A(d)(1).

of a final statement of basis and purpose.  Thereafter, the Commission will formally promulgate the rules and form and submit them to the Assistant Attorney General for concurrence. After concurrence has been obtained, the final rules and form will be published in the Federal Register, along with a statement of basis and purpose.  Under Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, the rules may become effective no sooner than thirty days after publication. */

Throughout preparation of both sets of proposed rules and during preparation of final rules, the staffs of the Commission and of the Antitrust Division have worked closely together. Staff-level procedures are being developed for coordinating the administration of the premerger notification program by the two agencies, including clearance mechanisms, continual exchange of information concerning the status of pending notifications, interpretations of the rules and proposals for modification of any reporting requirements, and any enforcement actions which may need to be instituted.

_____

*/   Section 202 of the Antitrust Improvements Act of 1976 specified that Section 201, containing new § 7A of the Clayton Act, would become effective 150 days after enactment, i.e., February 27, 1977.  (The rulemaking provisions contained in subsection (d) of § 7A became effective upon enactment.) Because final rules could not be promulgated prior to the effective date of the Act, the Commission on January 27, 1977, with the concurrence of the Assistant Attorney General, promulgated a Transitional Rule, which was published in the Federal Register of February 2, 1977 (see attachment IV). The Transitional Rule created an exemption for all transactions consummated prior to the effective date of the final rules and specified the manner in which the final rules would be implemented during the first thirty days following the effective date of the rules.

Because the final rules have not become effective as of this date, the Commission cannot now provide a full assessment of the Act, or of the related rules, as contemplated by subsection (j). The Commission expects to be able, on the basis of experience administering the premerger notification program, to provide a more comprehensive and detailed assessment of these matters in its second annual report.

The Assistant Attorney General in charge of the Antitrust Division has indicated his concurrence with this annual report.

By direction of the Commission.

(Mr.) Carol M. Thomas
Secretary