**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, BUSINESS ROUNDTABLE, AMERICAN INVESTMENT COUNCIL, and LONGVIEW CHAMBER OF COMMERCE, <br><br> *Plaintiffs*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION and ANDREW N. FERGUSON, in his official capacity, <br><br> *Defendants*. | Case No. 6:25-cv-00009-JDK |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
STAY PENDING APPEAL**

## TABLE OF CONTENTS

*Page*

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    THE FTC IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL..............2

    A.    The Court Correctly Held That Plaintiffs Have Article III Standing.......................3

    B.    The Court Correctly Held That The HSR Rule Violates The Administrative
        Procedure Act.........................................................................................................4

II.   THE FTC HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE INJURY
    DURING ITS APPEAL .........................................................................................8

III.  THE BALANCE OF EQUITIES AND PUBLIC INTEREST CUT STRONGLY
    AGAINST A STAY .............................................................................................9

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Alliance for Hippocratic Med.* v. *FDA*,
  2023 WL 2913725 (5th Cir. Apr. 12, 2023) ...........................................................................8

*Castanon-Nava* v. *U.S. Dep't of Homeland Sec.*,
  161 F.4th 1048 (7th Cir. 2025) ...........................................................................................9

*Chamber of Com. of United States* v. *SEC*,
  85 F.4th 760 (5th Cir. 2023) ...............................................................................................6

*FCC* v. *Prometheus Radio Project*,
  592 U.S. 414 (2021).............................................................................................................6

*Mexican Gulf Fishing Co.* v. *U.S. Dep't of Com.*,
  60 F.4th 956 (5th Cir. 2023) ...............................................................................................5

*Michigan* v. *EPA*,
  576 U.S. 743 (2015).............................................................................................................5

*National Infusion Center* v. *Becerra*,
  116 F.4th 488 (5th Cir. 2024) .............................................................................................3

*Nken* v. *Holder*,
  556 U.S. 418 (2009).....................................................................................................1, 4, 8

*Plaquemines Parish* v. *Chevron USA, Inc.*,
  84 F.4th 362 (5th Cir. 2023) ............................................................................................1, 2

*Texas* v. *Biden*,
  10 F.4th 538 (5th Cir. 2021) .............................................................................................8, 9

*Summers* v. *Earth Island Inst.*,
  555 U.S. 488 (2009).............................................................................................................3

*Trump* v. *CASA, Inc.*,
  606 U.S. 831 (2025).............................................................................................................8

*U.S. Navy Seals 1-26* v. *Biden*,
  27 F.4th 336 (5th Cir. 2022) ............................................................................................2, 8

**Other Authorities**

*Premerger Notification; Reporting and Waiting Period Requirements*,
  89 Fed. Reg. 89,216 (Nov. 12, 2024)..................................................................................5

## INTRODUCTION

This Court issued its decision vacating the HSR Rule on February 12, and stayed its judgment for seven days "to allow the FTC time to seek emergency relief from the" Fifth Circuit. Nearing the close of business five days later, the FTC filed its motion yesterday asking the Court to issue an order staying its decision pending appeal by 4 PM Central Time today. Such a stay "is extraordinary relief for which defendants bear a heavy burden." *Plaquemines Parish* v. *Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023). It is "not a matter of right," but rather a significant "intrusion into the ordinary processes of administration and judicial review." *Nken* v. *Holder*, 556 U.S. 418, 427 (2009). Here, a stay would mean that a regulation that this Court held is unlawfully imposing substantial burdens on regulated parties will remain in force for at least many months while the Fifth Circuit considers the FTC's appeal. The FTC asks the Court to grant that relief in less than 24 hours.

The Court should deny the motion. The FTC's motion is almost entirely a retread of the same arguments this Court squarely rejected after multiple rounds of briefing. So it is unsurprising that the FTC does not even attempt to argue that it can make the required "strong showing of a probability of success on the merits" of its appeal. *Plaquemines Parish*, 84 F.4th at 373. And as the Court's opinion makes clear, there simply is no emergency here beyond the FTC's bare desire to receive more information at regulated parties' (and the larger economy's) expense. The FTC insists that it will be irreparably injured absent a stay because the Court's order "will prevent the Executive Branch from receiving th[e] information" demanded by the HSR Rule. Mot. 9. But as the Court held, the FTC failed to establish or explain how receiving all of that new information will help it to "detect illegal mergers more effectively than" it did under "the prior Form," in effect since 1976. Op. 22. The FTC tried to fix something that was not broken, so undoing its unnecessary fix will not break anything in turn. What it will do is force HSR filers to continue to

suffer the completely unjustified and undisputed costs of completing the expanded HSR Form while the FTC pursues its meritless appeal.

## ARGUMENT

To resolve a motion for stay pending appeal, a court considers four factors: (i) "whether the stay applicants have made a strong showing that they are likely to succeed on the merits"; (ii) "whether the applicants will be irreparably harmed absent a stay"; (iii) "whether issuance of the stay will substantially injure the other parties"; and (iv) "where the public interest lies."  *U.S. Navy Seals 1-26* v. *Biden*, 27 F.4th 336, 349-350 (5th Cir. 2022).  Here, the Commission cannot carry its burden as to any of these four factors, much less all of them.

## I.    THE FTC IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL.

To begin, the FTC falls far short of making "a strong showing of a probability of success on the merits," *Plaquemines Parish*, 84 F.4th at 373 (internal quotation marks omitted), because it can identify no error in this Court's determination that the Rule is unlawful.  First, the Commission rehashes its standing-related arguments, but the Court correctly held that Plaintiffs have established Article III standing with appropriate and undisputed summary-judgment evidence. *See* Op. 8-14.  Second, in its opinion on the merits, the Court correctly determined that the FTC's massive expansion of the longstanding version of the premerger notification form violated the APA for at least three different reasons:  the Commission exceeded its statutory authority, *id.* at 15-27; failed to conduct a reasonable cost-benefit analysis, *id.* at 27-32; and failed to properly analyze the less burdensome alternatives offered by numerous commenters, *id.* at 32-34.  To prevail on appeal, the FTC will have to run the table on *all* of those merits arguments, as well as several other arguments Plaintiffs raised that this Court had no occasion to consider.  The FTC has come nowhere close to a strong showing that it will be able to carry that heavy burden.

A.    **The Court Correctly Held That Plaintiffs Have Article III Standing.**

The FTC continues to press arguments against Plaintiffs' standing that, in this Court's words, "misunderstand[] both the law and the evidence."  Op. 12.

The FTC begins by attacking yet again Plaintiffs' declarations from senior association leaders, which contain "factual statements," Op. 9, supporting Plaintiffs' members' injuries.  As Plaintiffs have explained, that kind of declaration is a standard way of establishing associational standing in APA suits.  *See* Dkt. 62 n.1 (collecting examples).  Continuing to ignore that point, and without citing any Fifth Circuit authority, the FTC insists that the declarations are hearsay and that this precludes summary judgment.  But this Court explained why that is wrong:  the *facts* attested to in the declarations are plainly "capable of being" presented in an admissible form at trial—for example through testimony from the "members themselves"—and so may be considered in determining whether there is a *factual dispute* that precludes summary judgment.  Op. 9 (quoting *Maurer* v. *Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017)).  The FTC complains that it does not know the actual names of the members who could in theory testify at a trial.  But that is just the FTC's baseless pseudonymity objection in another garb.  This is nothing like the cases that the FTC cites (at 3)—and cited in its merits briefs, *see* Dkt. 64 at 1—involving hearsay statements on disputed factual issues by "unknown witnesses" who only might, possibly, "emerge" later.

Next, the FTC rehashes its argument that Plaintiffs were required to name their members to establish Article III standing, relying on *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 498-499 (2009).  As this Court held, that argument "misreads *Summers*," which requires averring that *at least one specific injured member exists*, not literally naming that member.  Op. 14 (citing *National Infusion Center* v. *Becerra*, 116 F.4th 488, 497 n.5 (5th Cir. 2024)).  In addition to again citing out-of-circuit cases that read *Summers* differently than the Fifth Circuit, the FTC argues (at 4) that *National Infusion Center* is distinguishable because it was "decided on a motion to dismiss."  But

3

that makes no difference.  To be sure, at summary judgment, a plaintiff must come forward with proof, not just allegations, and establish the absence of a genuine factual dispute.  But *how* the legal requirements of standing must be established at each stage is different from *what* the legal requirements are:  the former changes, the latter is constant.  And nothing about the use of a pseudonym inherently creates any dispute of fact.  The FTC has never asserted or given any reason to conclude—let alone provided evidence to suggest—that the pseudonymously identified members of each Plaintiff association do not exist, or that the facts about them are untrue or misleading.

In short, this Court applied settled law and rejected all of the FTC's arguments against Plaintiffs' Article III standing.  The FTC accordingly cannot show even a "mere possibility," let alone a strong likelihood, of obtaining the reversal of all those rulings on appeal.  *Nken*, 556 U.S. at 434.

### B.    The Court Correctly Held That The HSR Rule Violates The Administrative Procedure Act.

As for the merits, the FTC similarly cannot point to any likelihood that the Fifth Circuit will reverse this Court's decision vacating the Rule.  As the Court correctly held, the Commission (i) exceeded its statutory authority in revamping the HSR Form; (ii) failed to engage in a reasoned analysis of how the benefits of its unprecedented expansion of the HSR Form compared to its substantial costs; and (iii) unjustifiably rejected less restrictive alternative paths to accomplishing the Commission's professed goals.[1]  Again, the FTC must run that gauntlet to persuade the court of appeals to uphold the Rule, and there is no strong likelihood it can do so.

---

[1]    Because of these legal deficiencies permeating the entire Rule, the Court had no occasion to reach Plaintiffs' additional, targeted arguments that the FTC may not use the HSR Form to police violations of Section 8 of the Clayton Act, and that the FTC lacks authority to require filing parties to provide substantive legal analysis in the initial premerger "notification."  *See* Dkt. 44 at 17-18.

For starters, it is not entirely clear whether the FTC continues to stand by the statutory interpretation it adopted in the Rule, which expressly *rejected* the argument that "Congress intended the words 'necessary and appropriate' to require a cost-benefit analysis." *Premerger Notification; Reporting and Waiting Period Requirements*, 89 Fed. Reg. 89,216, 29,236 (Nov. 12, 2024). As the Court held, that interpretation set forth in the Rule was wrong: the plain text of the "HSR Act requires that any benefits to the FTC in mandating additional information in the premerger notice 'reasonably outweigh' the costs." Op. 19 (quoting *Mexican Gulf Fishing Co.* v. *U.S. Dep't of Com.*, 60 F.4th 956, 965 (5th Cir. 2023)). That decision followed directly from two precedents construing identical statutory language—*Mexican Gulf* and *Michigan* v. *EPA*, 576 U.S. 743, 752 (2015)—and the Court correctly rejected the FTC's attempts to distinguish those cases. Op. 18-19; *see* Dkt. 62 at 11-12.

Although the Commission now notes (as it did in its merits briefing) that it made reference to various costs and purported benefits at points throughout the Final Rule, Congress's statutory directive demands more. In particular, the FTC had to actually determine—and substantiate—that the new categories of information and documents the Rule would require in every premerger notification would provide benefits to the Commission's initial evaluation that are worth the "significant and widespread costs" the new Form would impose on thousands of lawful and beneficial transactions. Op. 2; *see* Dkt. 44 at 15-16. But as the Court explained, the agency offered only "vague and conclusory" explanations of how the Rule would help it to catch additional unlawful transactions, alluding to the FTC's generic "experience and expertise" without providing "specifics" or "evidence" to "substantiate [its] claim[s]." Op. 22-27. Most glaring, the agency "could not identify a single illegal merger in the forty-six-year history of the prior Form that the Final Rule's new form would have prevented." Op. 22. To the extent the agency put forward

anything concrete—namely, one study of hospital mergers—the Court explained how that study actually demonstrated that "the prior Form worked as it should have." Op. 23; *see* Brief for Am. Hospital Ass'n and Federation of Am. Hospitals as Amici Curiae, Dkt. 49.[2]

The FTC rehashes (at 6-7) its generic objections that federal agencies enjoy some deference in weighing costs and benefits, and are entitled to make "predictive judgments" even in the absence of past harms. But the Court applied a deferential standard, *see* Op. 27 (invoking "substantial evidence" standard), and still properly concluded that the FTC's "conclusory," "unsubstantiated," "vague," "lack[ing] specifics," and "underwhelming" analysis of the Rule's purported benefits, measured against its undisputed costs, compelled a ruling in Plaintiffs' favor. Op. 24-25. And the FTC's mantra of "predictive judgments" is not an escape hatch from the APA or the HSR Act, both of which required the Commission here to "adequately substantiate[]" the existence of a "genuine problem" to be solved, *Chamber of Com. of United States* v. *SEC*, 85 F.4th 760, 766-767 (5th Cir. 2023). The rule is that an agency may make "reasonable predictive judgment[s] *based on the evidence it ha[s]*." *FCC* v. *Prometheus Radio Project*, 592 U.S. 414, 426-427 (2021) (emphasis added). It cannot simply ignore the record assembled by commenters. Here, as the Court explained, that record reflected 50 years of success under the longstanding HSR Form, including the agency's own history of unbroken and recent praise, Op. 24, alongside the FTC's failure to "identify at least one harmful merger that the prior Form failed to detect," *id.*

---

[2]    Speaking of the concrete evidence cutting the other way, the FTC claimed (in its briefs) that a "significant benefit" of the expanded HSR Form is that it has "allowed the agencies to grant early termination" of the 30-day waiting period. Dkt. 57 at 37. The FTC's website shows 381 early terminations in total in 2025. But under the old form, the agency routinely granted *over 1,000* early terminations per year. *See* FTC and DOJ, HSR Report, Annual Report to Congress for Fiscal Year 2021 Appendix A, https://www.ftc.gov/system/files/ftc_gov/pdf/p110014fy2021 hsrannualreport.pdf. Thus, the agency is now granting far *fewer* early terminations than it did before it expanded the amount of material its staff must sift through—precisely what commenters warned would happen as a result of the Rule. *See, e.g.*, Dkt. 44-11 (Kothari Report) at 12, 23-24.

In a footnote, the FTC lumps together Plaintiffs' successful statutory-authority argument with their argument that the agency failed to reasonably analyze costs and benefits, as if the two points are entirely duplicative.  That overlooks that the Court had no need to address Plaintiffs' additional, independent arguments that the Final Rule's consideration of costs and benefits was arbitrary and capricious in other respects—arguments that the FTC will also need to overcome before the Fifth Circuit.  For example, because the Court concluded that the Commission failed to reasonably justify the Rule even under its own estimates of the substantial costs of the Rule, the Court did not need to address Plaintiffs' argument that the Commission had dramatically understated those costs.  Op. 29; *see id.* at 20 n.1.  Had it addressed the question, the Court would likely have concluded that the FTC's informal survey *of its own staff* unsurprisingly produced a significant undercount of the real-world direct costs in time and money of complying with the new Form.  *See* Dkt. 44 at 20-21.

Finally, this Court also correctly held that the FTC failed to "properly consider less burdensome alternatives offered in comments to the Final Rule," which constitutes another independent violation of the APA.  Op. 29.  Specifically, the FTC did not reasonably explain why issuing more Second Requests or voluntary access letters, at least to the 8% of filers whose proposed transactions send up an initial red flag, were not better alternatives than dramatically expanding the HSR Form for all filers.  The FTC claims (at 7-8) that it did in fact explain why it rejected those alternatives.  But the Court's point was not that the agency said literally nothing; it was that what the agency said was fundamentally irrational.  As the Court explained, the FTC "fail[ed] to explain why imposing" the additional costs associated with voluntary access letters or Second Requests "on a small subset of filers" was "a *more* 'costly' alternative than tripling the

costs of *every* HSR-reportable transaction for all filers," regardless of their relative antitrust risk. Op. 31 (emphases added).  On that point, too, the Court was correct.

## II.    THE FTC HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE INJURY DURING ITS APPEAL.

"Of the remaining three factors, irreparable injury matters most."  *Alliance for Hippocratic Med. v. FDA*, 2023 WL 2913725, at *18 (5th Cir. Apr. 12, 2023).  As the other "most critical" factor courts consider when deciding whether to stay judgments pending appeal besides the merits, "[s]uccess on [this] factor" likewise requires "a strong showing," not merely "some possibility of irreparable injury."  *Id.* (quoting *Nken*, 556 U.S. at 434).  And in the context of a motion for stay pending appeal, "the relevant question is whether the Government will be irreparably harmed *during the pendency of the appeal.*"  *Navy Seals 1-26*, 27 F.4th at 352-53 (quoting *Texas* v. *Biden*, 10 F.4th 538, 559 (5th Cir. 2021)).

The Commission fails to show that it will suffer any irreparable harm if the old Form retakes effect while the FTC pursues its appeal of this Court's decision.  The Commission starts by arguing in essence that, under *Trump* v. *CASA, Inc.*, 606 U.S. 831 (2025), any government agency *always* suffers irreparable harm any time a district court vacates a rule that the agency "believes . . . is necessary."  Mot. 8-9.  That argument plainly misunderstands *CASA*.  In that case, the Supreme Court found only that the government suffered irreparable harm from universal injunctions because such injunctions "likely exceed the authority conferred by the Judiciary Act." 606 U.S. at 860.  But the Court expressly stated that its opinion did not address "the distinct question whether the [APA] authorizes federal courts to vacate federal agency action"—*i.e.*, the remedy the Court granted in this case.  606 U.S. at 847 n.10.  Nothing in *CASA* stands for the remarkable proposition that a government agency is irreparably harmed under *Nken* any time a court "prevent[s] the Executive Branch from" doing something an agency wants to do.  *Castanon-*

*Nava* v. *U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1063 (7th Cir. 2025). And such a rule would be particularly perverse as applied to this case, when the Court found that the Commission failed to substantiate why it adopted the Rule in the first place.

The Commission appears to argue that it will be irreparably harmed because certain provisions of the Rule sought information that "plaintiffs did not dispute" or "to which plaintiffs never objected." Mot. 9. As an initial matter, that is factually wrong: Plaintiffs challenged the lawfulness of the *entire* Rule, and this Court agreed. In any event, to the extent the Commission believes that certain information required by the Rule is uncontroversial or easily justified, nothing prevents it from taking separate regulatory action to obtain that information from filing parties. And even for information "the Commission is *mandated* to seek," *id.*, when it took the Commission two years to implement a 2022 statute, it can hardly claim irreparable harm from being unable to seek that information during the pendency of an appeal.

If anything, the Commission stands to *benefit* from a return to the more streamlined prior Form. Its staff will have substantially less information and documentation from all filers to review and sort through. As before, the Commission can instead reallocate those staff hours and resources to focus on the tiny fraction of reportable transactions that might actually pose some antitrust concern.

## III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FACTORS CUT STRONGLY AGAINST A STAY.

As for the last two factors, the Commission cannot show that the equities or public interest favor keeping the Rule in place during its appeal. "There is generally no public interest in the perpetuation of unlawful agency action." *Texas* v. *Biden*, 10 F.4th at 560 (quoting *League of Women Voters of U.S.* v. *Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). As explained above, this Court correctly found that the Rule is unlawful, and that it unjustifiably imposes substantial costs on

parties to mergers that pose no conceivable antitrust concern. There is *no* interest in requiring such parties—including but certainly not limited to Plaintiffs' members—to continue to bear these excessive costs. And given the FTC's inability to substantiate its claim that it needs the additional information required under the Rule to detect potentially unlawful mergers, it cannot claim any legitimate interest in keeping the new Form in place either.

The Commission is instead left to rely (at 10) on claims that parties will face "uncertainty" and confusion if the Court's decision is not stayed pending appeal, because they will "have to decide whether to begin filling out the old form instead of the new form." That concern is vastly overstated. Keeping the new Form in place notwithstanding this Court's holding that it is unlawful is unlikely to generate any less uncertainty than giving effect to the Court's decision while the Commission appeals. And of course, the Commission is perfectly capable of clearing up any such confusion about which form parties should file, as it has already done in the wake of this Court's decision. *See* https://www.ftc.gov/enforcement/premerger-notification-program.[3]

As for the Commission's professed concern (at 10) about parties who "have already incurred the time and expense of completing some or all of the new form," the Court already rejected essentially the same argument when concluding that vacatur "would not be unduly disruptive." Op. 33-34. The "existence of some costs to some parties" is no more a basis to keep the entire Rule in place than it is a reason counseling against vacatur. *Id.* at 34. In any event, the Rule did not change the old form into an entirely new form; it *expanded* the old form by "requiring approximately twenty . . . new categories of information and documents." *Id.* at 6. So parties'

---

[3]    "**IMPORTANT NOTICE:** On February 12, 2026, a federal district court vacated the new HSR form that took effect on February 10, 2025. The court has stayed its decision for seven days. The new form thus remains in place through February 19, and any filers submitting between now and then should use the new form. We will provide further updates soon."

efforts to complete the old form will not be wasted in the highly unlikely event the Commission prevails on appeal.

Finally, the Commission's claim (at 10) that "any harms to plaintiffs are minimal" is hard to take seriously.  Indeed, this Court has already concluded otherwise.  As it recognized, even the Rule itself acknowledged that the new Form will impose "roughly triple the costs to comply with the previous Form."  Op. 20.  Plaintiffs easily showed that their members face "a substantial risk of [incurring that] future harm."  *Id.* at 13.  And the fact that Plaintiffs did not seek a TRO or preliminary injunction at the outset of this litigation does not somehow waive their ability to oppose a stay now that the Court has ruled in their favor and held, in a final order, that the challenged Rule is unlawful several times over.

## CONCLUSION

For the foregoing reasons, the Court should deny the FTC's motion for a stay pending appeal.

February 18, 2026

Jordan L. Von Bokern*
Audrey Dos Santos*
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC  20062
Tel:  (202) 463-5337
jvonbokern@uschamber.com
adossantos@uschamber.com

Respectfully submitted,

/s/ *Shaun W. Hassett*
Shaun W. Hassett
(Texas Bar No.: 24074372)
Michael E. Jones
(Texas Bar No.: 10929400)
POTTER MINTON, PC
102 North College Avenue
Suite 900
Tyler, TX  75702
Tel:  (903) 597-8311
mikejones@potterminton.com
shaunhassett@potterminton.com

Jeffrey B. Wall*
Judson O. Littleton*
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, DC  20006
Tel:  (202) 956-7000
wallj@sullcrom.com
littletonj@sullcrom.com

Maxwell F. Gottschall*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  (212) 558-4000
gottschallm@sullcrom.com

*Counsel for Plaintiffs Chamber of Commerce of the United States of America, Business Roundtable, American Investment Council, and Longview Chamber of Commerce*

*\* Pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2026, I electronically transmitted the attached document to the Clerk of the Court and all counsel of record using the ECF System for filing and service.


/s/ *Shaun W. Hassett*
Shaun W. Hassett